# THE AMERICAN EXPRESS CO. ET AL. V. WILLIAM PATTERSON.

1. *Power of Corporation to Arrest by Means of an Agent.*—An express company, from the very nature and necessities of its business, has a right to employ agents to make an arrest of one supposed to have stolen or embezzled money or property of the company, or money or property for which it is responsible, as well as to employ agents to do its ordinary work. And such agent may pursue such suspected person, and by all proper modes cause his arrest and his punishment, if found guilty.

2. *Responsibility of Company for the Torts of such Agent.*—It necessarily results from such power that the company must be held liable for any trespass such agent may commit in the prosecution of such employment, according to the general rule by which the master is held responsible for the conduct of his servant. The general rule is, then, that a corporation is liable for the willful acts and torts of its agents, committed within the general scope of their employment, as well as for acts of negligence. And the corporation is thus bound, although the particular acts were not previously authorized, nor subsequently ratified by the corporation. And thus the corporation may become liable to respond in an action for false imprisonment.

3. *Evidence under a General Averment.*—Under a general averment, when there is no motion made for a more specific statement of facts, any evidence is admissible which tends to show the truth of the averment.

4. *Several Liability of Tort-feasors.*—The liability of tort-feasors is not joint, but several. The action may be againt all, or any number of them. Separate actions may be prosecuted at the same time against them, and separate verdicts and judgments obtained, whether for the same or different amounts; although the plaintiff can have but one satisfaction, and whether the judgment be joint or several, there is no right of contribution which can be enforced between the defendants.

5. *Void Warrant.*—Where a warrant is directed to any constable of the county, but is put into the hands of a special constable, who makes the arrest, the warrant is void and the arrest is illegal; and an action for false imprisonment will lie thereon, but not an action of malicious prosecution, unless there are malice and a want of probable cause.

6. *Evidence of Habeas Corpus Proceedings in an Action for False Imprisonment.*—Where a prisoner is discharged on a writ of *habeas corpus,* he may introduce the proceedings on the writ in evidence as a part of the transaction.

7. *Evidence of General Character in such Action.*—Where in an action for false imprisonment, the defendant, in mitigation of damages, details facts to show his good faith in the matter, the plaintiff may, in rebuttal, produce evidence of his general good character. Such evidence, however, is not admissible, in the first instance; nor can it be specifically applied to a reputation for truth and veracity, but must relate only to honesty and integrity.

8. *Hearsay Evidence.*—It is proper in such a case to produce evidence of the loss of employment by reason of the imprisonment. But the fact of such loss of employment must be proved like any other fact, and not by mere hearsay.

Complaint in three paragraphs for false imprisonment, to each of which paragraphs the appellants jointly and severally demurred. Demurrers overruled and exception. Issues of fact, jury trial, verdict and judgment for the plaintiff. Motions for a *venire de novo* and for a new trial made and overruled, and exception.

It is not necessary to set out the complaint in full. The counsel for the appellants admit that the three paragraphs are all based on the same transaction, and do not differ except in giving details and in the method of charging the several defendants, differences which will be noticed, so far as it may become necessary.

It is objected to the first paragraph of the complaint that it shows no cause of action against the defendant Richey.

The verdict was silent concerning Richey, and before taking judgment thereon against the appellants, the appellee dismissed the case as to him. He does not complain, and is not a party to the appeal. It is clear, for reasons which will be stated when we come to consider the motion for a *venire de novo*, that in this respect the court committed no error.

The further objection is made that the paragraph contains no direct charge against the express company ; that the acts of Hazen, as alleged, constituted an unlawful trespass, an assault and battery, for which the corporation could not be held liable, without showing that it authorized him to do the acts complained of, or that he did them in the line of his duty as agent of the company, and it is contended in this connection that the complaint is not made good against the company by the averment which is made, that the acts of Hazen were done " at the instigation and procurement " of the defendant, the American Express Company ; that the words, " instigation and procurement," are not terms which of themselves convey any legal charge ; that the means and the manner of instigation and procurement should have been stated, just as in making a charge of fraud ; it is necessary to allege the facts which constitute the fraud.

We do not think of more apt words with which the company could have been charged with responsibility. But if the objections

were well taken, the pleading would nevertheless be good on demurrer, but subject to a motion to be made more specific.    Stated succinctly, the complaint shows that on the 18th day of September, 1876, the plaintiff was arrested by said Hazen, without process or warrant, at St. Paul, Minn., on the false and groundless charge of the larceny of $1,015 from the office of said company, in Muncie, Indiana; that said Hazen, then and there, forcibly took the plaintiff to the office, and before the officers of said company, in said city, where, by the direction and orders of the officers of said company, the plaintiff was further imprisoned, his body searched, the keys to his baggage taken from him by force and violence, his baggage rifled, and papers and other articles taken therefrom, and forcibly and without right detained from him; that on the 20th day of said month, said defendant, still holding the plaintiff in custody by violence, as aforesaid, forcibly and by intimidation and threats took him from said city of St. Paul to Indianapolis, Ind., at the instigation and by the procurement of the defendants, the American Express Company, Edward W. Sloan, one Julien and William Brown, and that the parties last aforesaid then forcibly, with strong hand and with out legal authority or warrant of any kind, forcibly and by threats kept the plaintiff imprisoned and restrained of his liberty for six days, and denied him access to friends, attorneys or any persons except said Hazen and the other agents of said company, and said Sloan and Julien, and so held him imprisoned until set at liberty on a writ of *habeas corpus*, directed to and against said defendants, and on which they produced him, without alleging anything against him.

The transaction thus shown concerned the business of the company, that is to say, the recovery of money lost by the company, and which the plaintiff was supposed by the officer of the company to have stolen, or if not the recovery of the money, then, at least, the punishment of the supposed thief; and probably both these objects were aimed at.    We think it clear that the corporation had the power, by proper and lawful modes, to pursue, and cause the arrest and punishment of any one who had stolen or embezzled the money or property of the company or for which it was responsible.    If not expressly granted it, this power must be implied from the nature and necessities of the business of an express company.    Such com-

panies must be deemed to be empowered to employ agents to do such work, as much as to accomplish its ordinary purposes and business. It sufficiently appears that the defendant corporation did employ, instigate and procure the action of Hazen as set forth. From this it necessarily follows that the company must be held liable for any trespass committed by its said agent in the prosecution of that employment, according to the general rule by which the master is held responsible for the conduct of his servant. That rule as applicable to corporate bodies has been laid down for this State, and, as we believe, in harmony with the current of authority, as follows: "We think it well settled that a corporation is liable for the willful acts and torts of its agents, committed within the general scope of their employment, as well as acts of negligence; and that the corporation is thus bound, although the particular acts were not previously authorized nor subsequently ratified by the corporation. *The Jeffersonville Railroad Co.* v. *Rogers*, 38 Ind. 116; *The I. P. & C. R. W. Co.* v. *Anthony*, 43 Ind. 183.

An apt illustration as well as interesting discussion of the doctrine, is found in *Croaker* v. *The C. and N. W. Railway Company*, 36 Wis. 657 (17 Am. Rpts. 504), wherein the railway company was held liable for the act of a conductor who kissed a female passenger against her will.

The paragraph of the complaint under consideration, charges directly that the alleged injury to the plaintiff was done at the instigation and procurement of the appellant, the express company. The demurrer admits the fact, and under such general averment, there having been no motion for a more specific statement of the facts, it was competent for the plaintiff to offer any evidence which tended to show the truth of the allegation. *O. and M. Railway Company* v. *Collam* (present term); *The B. and C. Turnpike Company* v. *Pumphrey*, 59 Ind. 78; *The Pennsylvania Company* v. *Sedgwick*, Ibid. 336; *The C. H. and D. Railroad Company* v. *Chester*, 57 Ind. 297; *Hildebrand, Administrator*, v. *The T. W. and W. Railway Company*, 49 Ind. 399.

It follows, from what has already been said, that the court committed no error in refusing the fifth instruction asked by said defendant, which was this, viz:

"And in this case there is no evidence that the American Ex-

press Company, expressly authorized or directed any person to illegally arrest and imprison, or hold in custody the plaintiff, William Patterson, or expressly sanctioned it, and if the jury believe from the evidence that the defendant, the American Express Company, at the time of the alleged grievances, was a corporation engaged in doing a legitimate express business through her agents, they should find their verdict for the defendant, although they should believe from the evidence that the plaintiff had been illegally arrested and imprisoned by persons who were agents or acting as agents for the company."

If true, this instruction amounts to this, that an express company may employ agents to pursue, arrest and prosecute in lawful ways those who have or are supposed to have stolen money or goods from the company; but, if in the course and scope of his general employment for those purposes, the agent negligently or willfully commits a trespass and falsely imprisons the accused or suspected one, the company is not liable unless it expressly authorized or sanctioned the illegal arrest or imprisonment.

The theory of this instruction is also urged in support of the claim that the evidence does not sustain the verdict, but it is no better as applied to the evidence than in the instruction, and was rightly overruled in both.

The next claim is that the court erred in overruling the motion for a *venire de novo*, and this is claimed because the verdict is silent as to the defendant, Richey. Before taking judgment on the verdict against the other defendants, as has already been stated, the plaintiff dismissed the case as to the said Richey, who made no objection thereto, and did not join in the motion for a *venire de novo*. We are not able to see that the action of the court harmed the appellants. The liability of tort-feasors is not joint, but several. The action may be against all, or none, or any number of them. Separate actions may be prosecuted at the same time against the respective parties charged with the same wrong, and separate verdicts and judgments taken against them, whether for the same or different amounts, though the plaintiff can have but one satisfaction; but, whether the judgment be joint or several, there is no right of contributior which can be enforced as between the defendants. There is, therefore, no reason for a *venire de novo* in such a case, and the law, in fact, does not require it.

It is not out of the way to observe that if the complaint did not state a good cause of action against Richey, as appellants contend, there was certainly no available error in the dismissal and in the refusal of the court to grant a new *venire*. Had there been a verdict against said Richey, the judgment must have been arrested as to him, on his motion to that effect. In the second paragraph of the complaint, besides charging the same false imprisonment as is shown in the first, it is further alleged that afterwards as an additional act of imprisonment and trespass, the defendants procured Hazen to file his affidavit before a justice of the peace of Delaware county, Indiana, charging the plaintiff with the larceny of said money of the company; but that on the day set for trial, the defendants who were all present with counsel, refused to prosecute, and the plaintiff was discharged by the justice, etc. Complaint is made of the admission of evidence to show these proceedings. We do not perceive that error was committed in admitting this proof. The warrant on which the arrest was made, was directed to any constable of the county, but was put in the hands of a special constable who arrested the plaintiff and took him before the said justice of the peace. The arrest was therefore illegal on the face of the papers, and the evidence tended to show false imprisonment only, and not a malicious prosecution, as counsel contend. *Hayden* v. *Songer*, 56 Ind. 42.

For the same reason, there was no error in refusing the eighth instruction, wherein the appellant requested the court to charge the jury to give no weight to this evidence, unless it was shown that the prosecution was malicious, and begun without reasonable or probable cause. It was not a case of malicious prosecution, but an illegal one on an illegal warrant, involving no question of malice or of probable cause, as an essential to the right of action.

The objection made to the introduction in evidence of the proceedings on *habeas corpus*, does not seem to have been well taken. The facts concerning that procedure were averred in the complaint, and were connected with, and, indeed, constituted a part of the transaction complained of. The imprisonment of the plaintiff was terminated by his discharge on the writ, and the alleged conduct of the defendants in reference thereto, was not without a significance quite pertinent to the issue in the case.

Counsel, in their brief, also complain that the plaintiff was allowed to introduce evidence of his general character.  The question presented is not free from doubt, but we have concluded that, under the circumstances of the case, evidence of the plaintiff's general good character, and of his reputation for honesty and integrity, was admissible.

It has already been shown that the alleged false imprisonment was the arrest of the appellee upon a charge or suspicion that he had stolen a package of money from the express company.  It was therefore competent for the defendants to "show in mitigation of damages every circumstance connected with the transaction that had a tendency to show that they acted with honest motives and good faith in making the arrest; and that the plaintiff was strongly suspected and accused by the public for the crime for which he was arrested."  Eggleston on Damages, § 363.  The appellants did accordingly present a special plea in mitigation of damages, setting out at great length and in detail the circumstances on which they claimed to have acted in the belief of the plaintiff's guilt, and in support of this plea gave evidence on the trial.

Wharton, in his Law of Evidence, § 47, says that the "English and American courts have agreed in holding that so far as concerns the proof in civil issues, the character of either party is, as a rule, irrelevant.  So far has this been carried that in actions for malicious prosecution and for false imprisonment, the defendant, to sustain the defense of probable cause, cannot put the plaintiff's bad character in issue, though the proof may be offered in mitigation of damages."  See also 1 Greenleaf on Evidence, §§ 54, 55, 469.  In *Irrod* v. *Brooks*, 23 Ill. 526, followed in *Blizzard* v. *Hays*, 46 Ind. 166, it is held that in an action for malicious prosecution of the plaintiff on a charge of crime, it is competent for the plaintiff to introduce evidence to show that before and at the time of the prosecution complained of, he was a man of good moral character and reputation in the community where he lived, and that the defendant had knowledge of this, as tending to show a want of probable cause; and on the other hand, his bad character may be shown by the defense, as good ground for augmenting a suspicion against him.  "We know," says the Illinois court, "in no actions save criminal prosecutions and actions for defamation, can the char-

acter of the party, as a rule, be inquired into, but in such a case as this there seems to be great propriety in permitting it, for the reasons given." The reasons for permitting it in the case at bar, seem to be equally cogent and convincing. The evidence was not admissible in the first instance in this case as it would be in a case of malicious prosecution; but after the introduction by the defendants of evidence to support their plea in mitigation of damages, it was plainly pertinent and likely to be of great weight, if the plaintiff could prove a good character and reputation in rebuttal to the circumstances adduced against him and in contradiction of any claim or pretense on the part of the appellants that they acted in good faith in the belief of his guilt. The evidence is just as clearly relevant and pertinent in rebuttal of the alleged good faith of the defendants in making an arrest of the plaintiff, as it would have been, in the first instance, in an action for malicious prosecution, to show bad faith and want of probable cause. We conclude, therefore, that notwithstanding the defendants had offered no direct evidence against the general character of the plaintiff for honesty or integrity, that character was in an important sense involved in the issue presented by the answer in mitigation, and the evidence having been offered only in rebuttal, the court committed no error in admitting it.

In reason and good conscience it must be true that when the defendant may offer proof of the plaintiff's bad character in mitigation of damages, and does put in evidence a series of circumstances of a nature to cast suspicion on the plaintiff in respect of his character, the plaintiff must be allowed to rebut with proof in support of his good reputation.

But besides allowing proof of his general character for honesty, the court in this case permitted the plaintiff, over proper objection by the defendants, to produce evidence of his reputation for truth and veracity. No evidence to impeach that character had been adduced, and his character in that respect was not relevant to or directly involved in any issue in the case. We do not perceive on what ground the introduction of this evidence can be justified. But the counsel for the appellants have not argued this question, and we need not decide it. See *Whitesell* v. *Heiney*, 58 Ind. 108; *Gebhart* v. *Burkett*, 57 Ind. 38.

An exception was reserved to the ruling of the court in permitting the plaintiff to testify to the statements of certain parties in relation to their efforts to procure employment for the plaintiff. The testimony objected to was, in substance, that sometime before the arrest and imprisonment complained of, the plaintiff had, at St. Paul, Minn., spoken to one Drake, a train dispatcher, and one Smith, a railroad superintendent, to procure him employment, which they promised to do; and that on his return to St. Paul, after discharge from the imprisonment complained of, said Drake told him that he had had a situation for him at sixty dollars per month, but as the plaintiff was not there to take it, he, Drake, had to give it up. This testimony was objected to as hearsay, and as not within the issue, there being, as is claimed, no averment of special damage on account of the loss of this opportunity to obtain employment. It is doubtless the rule that such special damage cannot be proved unless specially averred. The third paragraph however contains an averment that the plaintiff " was prevented from securing a good paying situation in Minnesota by means of said arrest," and while the averment is not specific, there having been no motion to have it made more specific, any pertinent and proper evidence of a loss of such situation was admissible under it. But the objection that the evidence offered was hearsay, was well taken. ' The following extract from their brief shows all that counsel for the appellee have said in reference to this point, viz:

" This item of testimony was introduced for the purpose of proving a fact, that a situation worth $60 per month to plaintiff was open for him, which he lost in consequence of his arrest by the defendants. The fact supported the allegation in the complaint, and for that purpose the fact was admissible, and was not subject to the objection that it was hearsay testimony because the information of the fact was received from others. The objection that the evidence offered was not the best evidence of the fact, or the best way to make proof of the fact, was not made by the appellants, and the evidence not being hearsay, there was no error in overruling the objection."

We agree that the fact supported the allegation, and for that purpose the fact was admissible. But the objection goes not to the fact, but to the evidence offered in proof of it. The fact that a

situation was open for him and was lost because of his enforced absence, like any other fact resting in parol, was proveable by sworn testimony only, and Drake's statement to the plaintiff was no more admissible in evidence than the unsworn statement of any other person ·would have been.   There are instances where verbal declarations are themselves the fact to be proven, being a part of the *res gestae* and proveable as such.   But not so here.   The fact to be proved was that there had been a situation open to the plaintiff; not that Drake had said so, and his saying so was only hearsay and not admissible as evidence of the fact.

As the judgment must be reversed on account of the error stated, it is not necessary that this opinion be extended to a consideration of other questions which counsel have discussed.   They are of minor importance and not deemed likely to arise on a second trial.   Aided by the thorough study which counsel have evidently bestowed upon the case, counsel will be able to avoid the recurrence of the errors if any, there are in the record besides those which have been indicated.

The judgment of the circuit court is reversed with costs, and the cause remanded with instructions to grant the appellants·a new trial.

Marsh, Gregory & Templar, for appellant.

Joseph S. Buckles and John W. Ryan, for appellee.