FRANK R. JELLEFF, INC., to its own use and the Use of LIBERTY MUTUAL INSURANCE COMPANY, and Liberty Mutual Insurance Company

v.

POLLAK BROS., INCORPORATED.

Civ. No. 813.

United States District Court
N. D. Indiana,
Fort Wayne Division.

Dec. 31, 1957.

Hunt, Longfellow & Suedhoff, Ft. Wayne, Ind., Hogan & Hartson, Washington, D. C., for plaintiff.

Gilmore S. Haynie, Ft. Wayne, Ind., for defendant.

SWYGERT, Chief Judge.

This is an action for consequential damages resulting from a breach of an implied warranty of fitness in the sale of a "brunch coat" or smock by the defendant to the plaintiff Frank R. Jelleff, Inc. (hereinafter called Jelleff) on December 5, 1951.

Plaintiff Liberty Mutual Insurance Company, at all times material hereto, was the public liability insurer of Jelleff.

The defendant Pollak Bros., Inc. (hereinafter called Pollak) is a manufacturer of ladies' clothing. Its plant and principal offices are in Fort Wayne, Indiana. Jelleff owns and operates a retail store in the District of Columbia for the sale of women's apparel. Upon receipt of fifteen dozen smocks or "brunch coats" from the defendant, Jelleff offered them for sale to the public.

On January 10, 1952, Blanche K. Braden purchased one of these smocks. On March 6, 1952, Miss Braden, while wearing the smock in her kitchen, was severely burned when the coat burst into flames upon contact with a lighted burner on her electric stove.

On May 2, 1952, an action was instituted by Blanche K. Braden against Jelleff in the United States District Court for the District of Columbia seeking damages for breach of an implied warranty of fitness under the Uniform Sales Act, as adopted in the District of Columbia, D.C.Code (1951), § 28–1115. On May 21, 1952, plaintiffs notified defendant by mail of the institution of the Braden suit against Jelleff and requested defendant to either assume the defense of the action or to hold plaintiffs harmless. The defendant refused to undertake the defense.

Liberty Mutual Insurance Company being obligated to defend Jelleff by the terms of its insurance contract, employed counsel to defend the action. The Braden case was tried three times, the first two trials terminating with the jury in disagreement. At the third trial, the jury agreed upon a verdict, finding for Blanche K. Braden in the sum of $65,000.

Jelleff filed an appeal from this judgment and again wrote the defendant, advising it of the results of the trial, notifying it that an appeal had been filed, and requesting it to come forth and either settle the case or undertake the burden of an appeal. A response to this letter was requested from defendant but no answer was received.

The case was argued on appeal and the judgment of the trial court was affirmed by the United States Court of Appeals for the District of Columbia. See Frank R. Jelleff, Inc. v. Braden, 1956, 98 U.S. App.D.C. 180, 233 F.2d 671.

By this time, the judgment with interest and costs amounted to $70,001.47, trial expenses totaled $5,285.33. Counsel fees amounted to $17,803.82. Total expenses to plaintiffs arising out of the Braden case were $93,090.62.

This present action was filed by plaintiffs in this court on December 3, 1954, which date was between the second and third Braden trials. In the complaint, plaintiffs alleged the existence of the Braden litigation in Washington and prayed that, should judgment be awarded to Miss Braden, Pollak be found liable to Jelleff for the amount of the Washington judgment together with expenses incurred in defending the suit. After the Washington trial ended in a judgment for Miss Braden and that judgment was affirmed on appeal, the plaintiffs here amended their complaint alleging the judgment and praying for the amount required to satisfy the judgment and all costs incurred in conducting its defense including attorney fees. The present action is based on warranties identical to those on which the Braden suit was based, that is, breach of implied warranties of fitness and merchantability.

On January 25, 1957, plaintiffs filed their motion for summary judgment

supported by affidavits with exhibits attached thereto. Defendant has filed opposing affidavits. Each side filed two briefs in support of their contentions. Arguments on the motion were heard. On the basis of the pleadings, affidavits and admissions relating to this matter, I feel that no triable issue of fact exists and that granting summary judgment for the plaintiffs is the proper relief.

In my opinion, the decision in Liberty Mutual Ins. Co. v. J. R. Clark Co., 1953, 239 Minn. 511, 59 N.W.2d 899, is applicable to the principal issue presented herein: whether a finding that certain goods were defective, made in an action brought by a consumer against a retailer, is effective as a determination that the retailer's supplier sold him defective goods, in an action brought by the retailer to recover from the supplier. This issue is founded on the premise that the retailer was found liable to the consumer for breach of warranties identical to those given to the retailer by his supplier.

The Clark case, supra, holds that a finding of the retailer's liability to the consumer is conclusive of the supplier's liability to the retailer in an action over for breach of identical warranties, provided that the retailer is able to establish certain essential facts and the supplier is unable to prove certain adequate defenses. Briefly, the facts of this case were as follows: J. R. Clark Co., defendant, sold a ladder to Central Hardware, plaintiff's insured, upon express warranties relating to the strength, durability and safety of the ladder, to the quality of the lumber used in the ladder, to the quality of the workmanship in the ladder, and to the weight it could sustain. Central Hardware sold the ladder to one Kayser with identical express warranties. Subsequently, the ladder collapsed, injuring Kayser and he brought an action based on breach of warranty against Central Hardware in Missouri. In this action, he was successful, recovering a verdict for $5,000.

Plaintiff then brought the present action. "The jury returned a verdict for defendant. Plaintiff then moved for judgment notwithstanding the verdict or for a new trial on the grounds that the court's charge was inconsistent in holding that defendant was bound by the Missouri judgment as to the amount and at the same time permitting the jury to speculate as to the basis of the judgment and that the court erred in charging the jury that it might determine as a question of fact whether the injuries sustained by Kayser were the result of a defect in the ladder. The motion for judgment was granted and an appeal taken by defendant from the judgment subsequently entered pursuant thereto." 59 N.W.2d 899, 903.

The Court stated the mechanics of an action over based on breach of warranty to be as follows:

"Where personal property is purchased for resale and subsequently resold by the purchaser with warranties identical to those given him by his seller, damages recovered against the purchaser by the subpurchaser for breach of the warranties may in turn be recovered by such purchaser from the original seller, provided the damages sustained reasonably may have been expected to follow a breach of such warranties. London [Guarantee] & [Accident] Co. Ltd. v. Strait Scale Co., 322 Mo. 502, 15 S.W.2d 766, 64 A.L.R. 936; 46 Am.Jur., Sales, § 748. The original seller's liability in relation thereto extends to damages sustained by his purchaser because of injuries to third persons to whom the property was resold proximately caused by breach of the warranties. (Citing numerous cases.)

"In such situations, the liability of the original seller is concluded by a judgment against his purchaser in an action against the latter for breach of the warranties, provided the seller was duly notified of the commencement of the prior action and was tendered the defense thereof. London Guarantee & Accident Co. Ltd. v. Strait Scale Co., supra;

Annotation, 5 Ann.Cas. 589; Annotation, L.R.A.1915C, 337. The seller's liability under such circumstances extends to the amount of the judgment obtained against his purchaser and also the necessary expenses, including costs and attorney's fees, incurred by the purchaser in defense of the action. State Bank of New Prague v. American Surety Co., 206 Minn. 137, 288 N.W. 7; Inhabitants of Westfield v. Mayo, 122 Mass. 100, 23 Am.Rep. 292.

\* \* \* \* \* \*

"To establish his right to recover against the original seller under such a judgment the purchaser, in a subsequent action over against the seller, must prove that the article involved was purchased by him from such seller and that the warranties under which it was sold to him were identical to those under which he subsequently resold it. In addition, it would be incumbent upon him to establish that in the prior action it was determined that such warranties had been breached in the resale of the article; that the breach thereof had resulted in damages or injuries to the subpurchaser; and that therein the latter had obtained by judgment therefor against the purchaser. The pleadings, charge, and judgment in the prior action would serve to establish these facts.

"The purchaser would further be required to prove that notice of the commencement of the prior action had been given to the seller; that a tender of the defense thereof had been declined by the seller; and that purchaser had paid the judgment therein and any necessary costs and disbursements incurred in defense of the action. Proof of the foregoing would establish a prima facie case entitling the purchaser to judgment for the amounts thus paid.

"In defense thereto the seller would be entitled to submit evidence (1) that he had not sold the article; (2) that he had not sold it subject to the warranties determined to have been breached in the prior action; (3) that he had not been notified of the prior proceedings or tendered the defense thereof; or (4) that his purchaser had not made payment of, and was not liable for, the judgment or expenses incurred in defending the prior action. Establishment of any of these defenses would entitle the seller to a directed verdict. If none of the defenses outlined could be proved and purchaser established his prima facie case, as above set forth, then the purchaser would be entitled to a directed verdict in his favor without a relitigation of the issue of breach of the warranties described."

In support of their motion, plaintiffs have filed certified photostatic copies of the complaint, summons, answer, verdict and judgment from the file of the Braden case together with a transcript of the proceedings of the trial, their brief to the Court of Appeals, and photostatic copies of the judgment of the Court of Appeals and the praecipe showing the judgment paid and satisfied in full, with interest and costs. In addition, plaintiffs have filed photostatic copies of the letters of April 3, 1952, and May 21, 1952, advising defendant of Miss Braden's claim and of her subsequent suit; each letter also notifying defendant of plaintiffs' intention to look to defendant for indemnification if plaintiffs were held liable and requesting defendant to assume the burden of defense. To prove that the smock sold to Miss Braden was purchased from Pollak, plaintiffs have submitted photostatic copies of the invoice from Pollak, Jelleff's receiving slip and the sales slip issued to Miss Braden when she purchased the smock. These documents traced the passage of the garment from Pollak through the hands of Jelleff and ultimately to Miss Braden. Also submitted by plaintiffs are a list of expenses incurred in conducting the defense of the Braden suit and a schedule of their attorney's fees.

These exhibits of plaintiffs are attached to the affidavits of F. Leo Belser, the assistant comptroller of Frank R. Jelleff, Inc., of Paul R. Connolly, attorney for Liberty Mutual Insurance Company in the Braden suit and also in this action and of Leonard A. Dougherty, Claims Supervisor for Liberty Mutual Insurance Company. The affidavits in substance relate the facts as outlined in this opinion and vouch for the authenticity of the attached exhibits. Defendant's affidavits do not controvert the validity of the exhibits submitted by plaintiffs.

■■ It is apparent from these affidavits and exhibits that plaintiffs have satisfied the requirements listed by the Clark opinion as essential to establishing a prima facie case. However, I feel that proof of an additional fact is essential if the plaintiffs are to prevail; namely, the plaintiffs must demonstrate that there was no change or alteration in the condition of the goods between the date of purchase and the date of subsequent resale. Proof of this fact is essential for warranties given by a vendor ordinarily extend to and cover goods only in the condition in which they exist at the time of purchase and a vendor is not liable for a breach of warranty if, prior to the alleged breach, the vendee changes or alters the nature and quality of the goods in a manner not contemplated by the parties.

■ It seems that the issue of change or alteration of the goods while in the hands of the retailer was not raised in the Clark case. The absence of any change in the nature and quality of the article between the date of purchase and sale by the retailer is in my opinion an essential part of the plaintiffs' case. But, if this fact is proved, I see no reason why a determination of a retailer's liability for a breach of warranty should not be a conclusive determination that the retailer's supplier is liable to the retailer for the breach of an identical warranty if the supplier was given the opportunity to defend that determination in the first instance.

Here, plaintiffs have established by affidavit, Jelleff's customary procedure for handling goods from the receiving door to the purchaser's package. This procedure amounts to unpacking the goods, tagging them for identification and placing them on the show room floor for resale. There is no indication that plaintiffs changed or altered the goods in any manner. In addition, after taking the deposition of Mr. F. Leo Belser, assistant comptroller for Jelleff, defendant's counsel advised the Court in a letter which has been made a part of the file that:

"Based upon the answers of Mr. Belser, I am now satisfied that Frank R. Jelleff, Inc., did not process or alter the brunch coat or smock in any way and that nothing was done to the said brunch coat or smock by Frank R. Jelleff, Inc., which would in any way make the said garment more flammable."

In view of this admission, the question of whether or not the smock was in the same condition when sold to Miss Braden as it was when sold by Pollak to Jelleff is answered and thus no longer exists as a triable factual issue.

■ In concluding this discussion of Pollak's liability, it should be noted that Pollak has not advanced any of the four defenses indicated in the Clark decision. Indeed the affidavits filed by both sides would foreclose any doubt in the mind of a reasonable man (1) that Pollak sold to Jelleff the smock which ultimately caused Miss Braden's injuries, (2) that this sale was subject to implied warranties of fitness and merchantability, (3) that Pollak had notice and a tender of the defense of the Braden action, and (4) that the Braden judgment has been satisfied by plaintiff.

■ Pollak has introduced an issue of gross negligence on the part of plaintiffs' attorneys in their conduct of the Braden suit and has argued that such negligence should bar Jelleff's recovery over against Pollak. Defendant alleges negligence in that, after the first two Braden trials ended in hung juries, Jelleff's complaint

against Pollak was filed in this court. Over Jelleff's objection, the allegations of this complaint were read into evidence in the third Braden trial as an admission of liability on the part of Jelleff.

In my opinion, it cannot be contended that the filing of this complaint by Jelleff was negligent. It would be pure speculation to say that the reading of this complaint into evidence was what tipped the scales and caused the jury to find for Miss Braden in the third trial. Furthermore, Jelleff's attorneys had no way to foresee that this complaint would be admitted into evidence for, as the Court of Appeals indicated in its opinion, Frank R. Jelleff, Inc. v. Braden, supra, it was not following its own prior decisions in passing upon the admissibility of this pleading.

■ The defense of the Braden action was tendered to Pollak and refused. It is difficult to see how Pollak can now defeat liability on the grounds that the defense was poorly conducted. In any event, it appeared from the file that the defense was conducted in a competent, professional manner. As the Court of Appeals remarked in its opinion:

"The case was well tried by capable counsel and both sides ably advanced their respective claims." 233 F.2d at page 680.

Pollak has also denied liability for the full amount of damages which plaintiffs seek to recover. The reasonableness of the expenses and attorney's fees claimed has not been questioned. However, it is contended that Jelleff should not recover expenses incurred in the first two Braden trials since these trials ended in hung juries and also should not be allowed expenses and attorney's fees incurred in the appeal.

■ As for the first contention, I see no real distinction between those expenses, including attorney's fees, attributable to the third Braden suit which resulted in a verdict and those expenses attributable to the first two trials. A trial ending with the jury in disagreement is not a final determination of liability. Such a result does not preclude a plaintiff from continuing to prosecute his claim. The defendant in such a situation has no alternative but to continue defending. Thus, in my opinion, Pollak is liable for the expenses incurred by Jelleff in defending the Braden claim until a verdict was finally rendered.

■ I also feel that in this present case the expenses and attorney's fees involved in the appeal should be allowed. Defendant has urged that the reasoning of Murphy v. City of Yonkers, 1914, 213 N.Y. 124, 107 N.E. 267, L.R.A. 1915F, 598, should be followed. Although the Murphy case is well reasoned, I hesitate to interpret it as having universal application to all cases in which an indemnitee in an action over against his indemnitor seeks to recover the costs of an appeal of a prior determination of liability. The decision of United States Steel Corp. v. Emerson-Comstock Co., Inc., D.C.N.D.Ill. 1956, 141 F.Supp. 143, is correct in my opinion when it states:

"It is well established that in instances where the indemnitor denies any liability, the interest, attorney's fees and costs incident to an unsuccessful appeal may be recovered so long as the appeal was taken in good faith. (citing cases) As long as the indemnitor is denying all liability the appeal is not a useless act. The indemnitee is not required to gamble solely on the success of a suit against the indemnitor. It is equally entitled to protect itself by an appeal which may save it if its suit against the indemnitor proves ill founded." At page 148.

In his letter dated September 30, 1955, plaintiffs' attorney notified Pollak of the outcome of the Braden trial and that the right to appeal had been preserved. Again Pollak was asked to come forth and either settle the case or undertake the burden of an appeal. A reply was requested to this letter but none was forthcoming. Certainly Pollak did not expressly authorize the appeal. But it did have notice and could have mitigated expenses merely by informing Jelleff that

it had no interest in taking an appeal. Under the circumstances I feel Jelleff took the appeal in good faith and that defendant should bear the expenses, and attorney's fees.