COCA–COLA BOTTLING COMPANY–
GOSHEN, INDIANA, Appellant
(Third-Party Plaintiff below),

v.

VENDO COMPANY and Tecumseh Products Company, Appellees (Third-Party Defendants below).

No. 3–682A115.

Court of Appeals of Indiana,
Third District.

Oct. 25, 1983.

Rehearing Denied Jan. 20, 1984.

Joseph Stalmack, Jr., James W. Roehrdanz, Galvin & Galvin, P.C., Hammond, for appellant.

Edward L. Murphy, Jr., Livingston, Dildine, Haynie & Yoder, Fort Wayne, John E. Doran, Doran, Manion, Boynton, Kamm & Esmont, South Bend, for appellees.

GARRARD, Judge.

After a fire occurred in their warehouse, Space Assemblies, Inc. and SAI Partnership (lessees) brought suit for damages against Coca-Cola Bottling Company of Goshen (lessor). The suit alleged that the fire was caused by the malfunction of a soft drink vending machine that had been leased by the lessee. The complaint contained counts based upon strict liability, negligence and breach of warranty.

The lessor then filed third-party complaints asserting a right to indemnity against Vendo Company (Vendo), the manufacturer of the vending machine, and against Tecumseh Products Company (Tecumseh), manufacturer of the compressor used in the vending machine.

After hearing on motions for summary judgment the court ruled that the lessor was entitled to judgment on the strict liability claim against it under the Indiana Products Liability Act, IC 33–1–1.5–5. The court also determined that Vendo and Tecumseh were each entitled to summary judgment on the lessor's claims against them for indemnity.

The undisputed facts disclose that Vendo manufactured and sold the vending machine in 1961. Pursuant to a "Cooler Rental Agreement"[1] the lessor leased the machine to the lessee in 1978. The fire occurred May 3, 1979. There is no contention that either Vendo or Tecumseh had a written indemnity contract with the lessor.

The lessor now appeals from the adverse summary judgments entered on its third party claims for indemnity.

I.

The lessor first argues simply and forthrightly that the time has come for Indiana to overturn its adherence to the long-established rule barring contribution among joint tortfeasors. In support of this contention it points to the "illogical" extension of the rule in this country to situations involving merely negligence on the part of each of the tortfeasors,[2] and to the fact that forty-two states now provide some system for contribution by specific statute, as a part of a comparative negligence system, or by judicial decision.

Vendo and Tecumseh remind us of Professor James' arguments presented more than forty years ago urging that as a practical matter adopting contribution to provide justice for the uninsured "little guy" is an illusion because the situation it envisions practically never exists. He argued that the rule against contribution should be maintained because contribution (a) makes it harder for plaintiffs to settle their claims, (b) tends to favor the large and wealthy defendant thereby making a less effective social distribution of the loss, and (c) confers no substantial countervailing benefits since in operation contribution is generally sought by the "constant" litigants so that the long run effect may be merely one of cancelling out. *James, Contribution Among Joint Tortfeasors: A Pragmatic Criticism,* 54 HARV.L.REV. 1156 (1941).

We are also aware that Indiana's prospective comparative negligence statute, which was enacted after appellant's brief was written, does not provide for contribution among joint tortfeasors, but instead limits recovery against each primary tortfeasor to a percentage of the damages corresponding to that defendant's degree of fault.[3]

---

**1.** Under the lease agreement the lessor agreed "to maintain and keep in good mechanical condition" the vending machine.

**2.** *See Prosser: Torts* (4th Ed.) pp. 305–307.

**3.** P.L. 317–1983, effective January 1, 1985.

While it may be that the time is near at hand for Indiana to assess its position on contribution among joint tortfeasors, that is more properly a task for the legislature or our Supreme Court. We decline appellant's invitation as we are bound by the traditional Indiana rule set forth in *Barker v. Cole* (1979), Ind.App., 396 N.E.2d 964. *See also Jackson v. Record, Admr.* (1937), 211 Ind. 141, 5 N.E.2d 897; *The American Express Co. v. Patterson* (1881), 73 Ind. 430.

## II.

Lessor next argues that regardless of the rule against contribution it is entitled to seek indemnity from Vendo and Tecumseh for any recovery the lessee may secure against it.

■ We agree that whether a claim for indemnity be characterized as a species of contribution or not really contribution at all, in the appropriate circumstances the claim will lie despite the general rule against contribution among joint tortfeasors.[4] In Indiana in the absence of an express contractual or statutory obligation to indemnity, the action will lie only where the party seeking indemnity is without actual fault but has been compelled to pay damages because of the wrongful conduct of another for which he is constructively liable. *Bituminous Casualty Corp. v. Hedinger* (7th Cir.1969), 407 F.2d 655, 656. Thus, the claim may apply in tort claims involving such liabilities as respondeat superior, *Indiana Nitroglycerin & Torpedo Co. v. Lippincott Glass Co.* (1905), 165 Ind. 361, 75 N.E. 649, or in breach of warranty situations where the retailer is sued upon implied warranties which are identical to those imposed upon the manufacturer's sale to him. *Frank R. Jelleff, Inc. v. Pollak Bros.* (N.D.Ind.1957), 171 F.Supp. 467.

■ On the other hand, because of the equitable nature of such indemnity claims and the rule against contribution among tortfeasors who are *in pari delicto* indemnity will not be allowed where the party claiming indemnity is guilty of actual negligence, whether malfeasance, misfeasance or nonfeasance. *Silvers v. Nerdlinger* (1868), 30 Ind. 53; *Vernon Fire & Casualty Ins. Co. v. Graham* (1975), 166 Ind.App. 509, 336 N.E.2d 829; *City of Gary v. Bontrager Const. Co.* (1943), 113 Ind.App. 151, 47 N.E.2d 182. This is true in Indiana because we recognize no degrees of negligence. *McClish v. Niagara Machine & Tool Works* (S.D.Ind.1967), 266 F.Supp. 987; *Indiana St. Hwy. Comm. v. Thomas* (1976), 169 Ind. App. 13, 346 N.E.2d 252.

■ Similarly where the claim for indemnity is based upon the manufacturer's breach of identical warranties, indemnity will be denied if the claimant breached a duty to inspect the article and inspection would have revealed the defect, *Grummons v. Zollinger* (N.D.Ind.1960), 189 F.Supp. 64, or if claimant fails to demonstrate that there was no material change or alteration in the condition of the article between the date of his purchase and the date of his subsequent resale. *Frank R. Jelleff, Inc. v. Pollak Bros.* (N.D.Ind.1959), 171 F.Supp. 467; *Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.* (1978), 177 Ind.App. 508, 380 N.E.2d 571.

Additionally, it must be noted that one of the elements of a claim for indemnity is that the claimant has paid or been compelled to pay a judgment recovered by the injured person.[5] *Dipple v. Douglas* (1860), 14 Ind. 535; *Ozark Airlines, Inc. Fairchild-Hiller Corp.* (1979), 71 Ill.App.3d 637, 28 Ill.Dec. 277, 390 N.E.2d 444; *Hager v. Brewer Equip. Co.* (1973), 17 N.C.App. 489, 195 S.E.2d 54. *See also* Annot., 57 A.L.R.3d 867.

**4.** In a claim for indemnity the party seeking relief will recover a judgment over for the entire amount of his liability, whereas the normal connotation of contribution is that the party seeks to recover only a portion of the amount for which he has been found liable. *See Prosser: Law of Torts* (4th Ed.) pp. 310–313.

**5.** Indiana Rules of Procedure, Trial Rule 14, by permitting third-party practice against one "who is or may be liable to him for all or part of the plaintiff's claim" allows the claim for indemnity to be litigated contemporaneously with the injured party's claim.

There are two significant consequences in recognizing this as an element of the claim. First, as the cited A.L.R. annotation points out, the statute of limitations on the claim for indemnity will not commence to run until the indemnity claimant's liability has been fixed.

■ Secondly, however, for purposes of considering motions to dismiss or for summary judgment, disputed factual questions in the litigation which may preclude or defeat the liability of the indemnity claimant to the party actually injured, will not prevent the court from disposing of the indemnity claim. If the indemnity claimant is not liable to the original plaintiff, *a fortiori* he has no claim for indemnity. *McClish, supra; Dipple, supra.*

While our analysis differs to some extent from that of the trial court, we note that it is our duty on summary judgment to affirm the trial court if its judgment is correct for any reason. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154.

The trial court entered its findings and conclusions concerning the lessor's indemnity claims based upon the theories of liability asserted by the lessee against the lessor.

It found that the lessee's claim against the lessor for strict liability was barred by the ten year limitation provision contained in the Indiana Products Liability Act, IC 33–1–1.5–5.[6] It found that as a consequence the lessor's indemnity claims based upon strict liability were also barred. We agree, but believe some explanation of our analysis is in order.

Indiana's products liability statute, IC 33–1–1.5–1 et seq. provides that the act "shall govern all products liability actions, including those in which the theory of liability is negligence or strict liability in tort" but that it does not apply to actions "arising from or based upon any alleged breach of warranty." IC 33–1–1.5–1. Section 3 of the act then limits application of strict liability to the *sellers* of products. IC 33–1–1.-5–3.

It must also be observed that Section 6 of the act provides,

"Nothing contained herein shall affect the right of any person found liable to seek and obtain indemnity from any other person whose actual fault caused the product to be defective."

IC 33–1–1.5–6. While this section by its plain language does not purport to create new rights to indemnity, with equal plainness it expresses the intent that the various limitations contained therein shall not bar an otherwise valid claim to indemnity.

Moreover, under the traditional analysis of indemnity rights in Indiana, we have no doubt that a "mere" seller under the act can claim indemnity against the previous seller who actually caused the product to be in "a defective condition unreasonably dangerous to any consumer."[7]

Our analysis proceeds then in the same manner as that of *McClish v. Niagara Machine & Tool Works* (D.Ind.1967), 266 F.Supp. 987.

■ Assuming *arguendo* that the lessee could state a claim against the lessor as a "distributor" for purposes of the products liability statute, the lessee's claim is barred by the ten (10) year limitation provision of IC 33–1–1.5–5. Therefore, since the lessor cannot become liable on that ground, it can have no coordinate claim for indemnity which would presuppose liability technically imposed upon it as a seller of a defectively dangerous product. The same analysis precludes it claiming indemnity for strict liability if it is simply not a seller within the meaning of the act. For if it is not a seller then any liability it incurs is upon some

---

**6.** "[A]ny product liability action must be commenced ... within ten (10) years after the delivery of the product to the initial user or consumer ...." Here seventeen years had elapsed between initial delivery and delivery to the lessee, and another two years elapsed before suit.

**7.** IC 33–1–1.5–2 defines "seller" to include a manufacturer, wholesaler, retail dealer, or distributor.

basis *other* than having sold a defectively dangerous product.

The lessee secondly claimed the lessor was guilty of negligence in installing and maintaining the vending machine. To the extent this represents a claim outside the purview of the products liability statute, *see* IC 33–1–1.5–1,[8] it asserts that the lessor was negligent in providing or failing to maintain the machine. The lessor was, of course, a bailor of the goods. As such it owed to the bailee a duty to exercise reasonable care. *Shuttleworth v. Crown Can Co.* (7th Cir.1948), 165 F.2d 974; *Flint & Walling Mfg. Co. v. Beckett* (1906), 167 Ind. 491, 79 N.E. 503.

■ If it was not negligent then it would not be liable to the lessee and so would have no claim for indemnity. On the other hand, if the lessor was negligent in its inspection or maintenance of the machine, then that negligence would preclude its claim for indemnity because of the rule against contribution among joint tortfeasors as discussed, *ante. McClish, supra; Wicks v. Ford Motor Co.* (N.D.Ind.1976), 421 F.Supp. 104. Accordingly, the court correctly concluded that no claim for indemnity existed on a negligence analysis.

The question remaining is whether indemnity upon the basis of identical implied warranties might be claimed. *See Grummons, supra; Frank R. Jelleff, Inc., supra;* and *Uniroyal, Inc., supra.*

■ As to the indemnity claim against Tecumseh we agree with the trial judge that privity was necessary to the claim and was lacking. Summary judgment for Tecumseh was therefore proper.

As to the indemnity claim against Vendo the trial court found the claim was barred by the four year statute of limitations contained in the commercial code. This was in error. As we have previously discussed, the statute of limitations on the lessor's claim against Vendo would not commence to run until the lessor's liability was determined.

As a bailor the lessor impliedly warranted to the lessee that the machine was reasonably fit for its intended purpose. *Pointer v. American Oil Co.* (S.D.Ind.1969), 295 F.Supp. 573; *Bass v. Cantor* (1890), 123 Ind. 444, 24 N.E. 147.

Assuming *arguendo*[9] that this warranty would have the necessary identity (*Frank R. Jelleff, Inc., supra,*) with an implied warranty of merchantability in the 1961 sale from Vendo to the lessor, several questions remain about the lessor's ability to claim indemnity.

If the lessor had a duty to inspect before it delivered the machine and that inspection would have revealed the defect, then the indemnity claim is barred. *Grummons v. Zollinger* (N.D.Ind.1960), 189 F.Supp. 64.

Also, in order to claim indemnity the lessor must carry the burden of establishing that there was no material change or alteration in the condition of the machine between the purchase from Vendo and the bailment to the lessee. *Frank R. Jelleff, Inc., supra; Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.* (1978), 177 Ind.App. 508, 380 N.E.2d 571.

Finally, warranties of merchantability and reasonable fitness do not contemplate that goods should last forever. *See Jones v. Abriani* (1976), 169 Ind.App. 556, 350 N.E.2d 635. Thus, any implied warranty of Vendo may have been satisfied, in which event no claim for indemnity would lie.

■ The problem is that the factual information in the record before us is so sparse. For example, we can surmise that the vending machine was probably used regularly by the lessor or its lessees throughout the years it owned the machine, and we can speculate that use for that period would either constitute a satisfaction of any implied warranty by Vendo or, at

---

**8.** Negligent manufacture, construction or design of the product are within the statute. IC 33–1–1.5–2.

**9.** In 1961 Indiana applied the uniform sales act. *See* Burns.Ind.Annot.Stat. Section 58–115 [repealed]. The parties have not briefed the question nor is the record adequate, at this point, for us to determine it.

least, establish a material change in condition. But those questions are not foreclosed by the record before us, and we read *Uniroyal, Inc., supra* to hold that summary judgment is therefore inappropriate.

We therefore conclude that summary judgment upon lessor's indemnity claim against Vendo for breach of identical warranties was, at least, premature and must be reversed. In all other respects the trial court is affirmed.

Affirmed in part, reversed and remanded in part. Costs taxed one half to appellant and one half to appellee Vendo.

HOFFMAN, P.J., and STATON, J., concur.