INDIANA BOARD OF PHARMACY v. HORNER.

[No. 29,779. Filed February 6, 1961.]

*Edwin K. Steers,* Attorney General, and *Frank E. Spencer,* Deputy Attorney General, for appellant.

*Arthur J. Sullivan, Lee M. LeMay, David Millen* and *Steers, Klee, Jay & Sullivan,* all of Indianapolis, for appellee.

JACKSON, J.—This is an appeal from the judgment of the Marion Superior Court, Room No. 4, in a proceeding for judicial review of the action and decision of the Indiana Board of Pharmacy, by which judgment the trial court set aside and vacated the finding and determination of appellant that appellee was guilty of gross immorality in connection with his duties as a licensed pharmacist on account of the large amount of narcotic drugs he dispensed to one Louise Davis (whose full and correct name is Claire Louise Davis).

Appellee presented to the trial court, by verified petition, the issue of whether or not the order of the Indiana Board of Pharmacy was arbitrary, capricious and an abuse of discretion; because, as he asserted, there was no evidence whatsoever to substantiate it, that there was no charge or evidence of violation of Acts 1911, ch. 117, §3, p. 443, being §63-1120, Burns' 1951 Replacement, known as the State Pharmacy Board Act under which he is licensed, that the charges and evidence do not constitute "gross immorality." He also presented as issues the contentions that his constitu-

tional rights, privileges and immunity were violated in the hearing and proceedings before appellant in that he was accused and judged by the same board and members; that the finding and order of the board exceeded its statutory jurisdiction in that he had no duty to make an effort, diligent or otherwise, to determine whether or not the physicians issuing said prescriptions acted in good faith; that the charges against him do not constitute a violation of the Act under which he was licensed; that he was denied due process of law in that he was prosecuted by the same person or persons who made the investigation against him and who sat in judgment upon him; that the finding of the Board is unsupported by substantive evidence for the reason that absolutely no evidence was introduced that he had at any time acted in bad faith, that he had no knowledge that Louise Davis was an addict, nor that he had filled any particular one or all of said prescriptions.

We think it pertinent in this appeal that a part of the record, embodying a portion of appellee's appeal from the Board be here incorporated for the purpose of pin pointing some of the attendant circumstances leading to this entire proceedings.

"17. . . . All of the witnesses who testified in behalf of the defendant Indiana State Board of Pharmacy testified that said Louise Davis to who this Petitioner was charged with selling durgs [drugs] was not a narcotic addict and that said Louise Davis for a period of many years has suffered from excruciating pain; that out of the four doctors with whom she maintained a physician and patient relationship, all of the doctors in good faith issued to Louise Davis prescriptions for narcotics to alleviate her pain and mental suffering and for no other reason whatsoever. Nowhere in the transcript is it alleged that any Physician or surgeon or any other person either singly or jointly ever issued her a prescription for narcotics except in

good faith and the only act which this petitioner is charged with doing is the filling of prescriptions issued by physicians and surgeons who were duly licensed physicians under the laws of the State of Indiana and who were all reputable and honorable men in their profession. No evidence was introuduced [introduced] or tendered at the hearing that the petitioner knew or had any reason to believe that Louise Davis was a drug addict but on the contrary the evidence conclusively showed that said Louise Davis had had seventeen major operations in a short period of time including but not limited to a breast biopsy, lobotomy, three gallstone operations, three operations for ileitis, five kidney stone operations, a double phrenicotomy, a crush of the phrenic nerve operation and three hysterectomy operations.

"18. The evidence further showed that prescriptions were filled by various pharmacists at the drug store owned by said John F. Horner and nowhere is it shown that any one of said prescriptions was filled in bad faith or that John F. Horner had any knowledge that Louise Davis was an addict and it was not shown by the defendant Indiana State Board of Pharmacy that said petitioner filled any particular one or all of said prescriptions.

"19. The evidence further showed that Louise Davis had varicose veins and her legs looked as if they were bleeding, that she had hemorrhages from the eyes, nose and ears, that she would go the drug store of Petitioner on numerous occasions with towels to her ears and nose that were full of blood. That Louise David [Davis] was able to go to the drug store under her own power and that her principal physician had been Dr. Waymire, that he had notified the U. S. Narcotic Agent at Indianapolis of Louise Davis and of her condition; that said U. S. Narcotic Agent had visited Louise Davis at Dr. Waymire's office which was at 1827 College, across the street from Petitioner's Drug Store and after said visit advised Dr. Waymire to continue prescribing narcotics to ease and grant relief from the pain suffered by said Louise Davis. That Dr. Waymire stated to Petitioner that it was his opinion that Louise Davis had a malignant tumor of the brain."

At the conclusion of the trial the Marion Superior Court, Room No. 4 found for the appellee and the following conclusions and judgment were entered.

"CONCLUSION OF FACT Based upon the findings of fact in paragraphs one through twelve of said Finding of Fact, it is the conclusion of the Court that the Petitioner, John F. Horner filled said prescriptions in good faith and that there is no substantial evidence to support the finding of the Indiana State Board of Pharmacy that said John F. Horner acted in other than good faith.

"CONCLUSIONS OF LAW. In accordance with the findings of fact and the conclusions of fact as hereinabove set out, it is the finding of this court that:

"1. The decision of the Indiana State Board of Pharmacy was arbitrary, capricious, and an abuse of discretion.

"2. That is [it] was unsupported by substantial evidence.

"WHEREFORE, the Decision and Determination of the Indiana State Board of Pharmacy is set aside and judgment is hereby entered for the Petitioner."

The appellant's assignment of error contains seven specifications. The errors assigned, omitting the formal parts, are as follows:

"1. The decision of the Court is not sustained by sufficient evidence.

"2. The decision of the Court is contrary to law.

"3. The Court erred in weighing the evidence in this cause, and thereby substituting its findings, conclusions of law, determination and decision for that of the appellant Board, when and in spite of the fact that there was substantial and competent evidence of probative value before the said Board to sustain its finding, determination and order.

"4. The Court erred in its Conclusion of Law numbered '1.'

"5. The Court erred in its Conclusion of Law numbered '2.'

"6. The Court erred in considering only that evidence favorable to Appellee and in refusing to consider the evidence favorable to and supporting the finding, determination and order of the Appellant.

"7. The Court erred in its Conclusion of Fact that there was no substantial evidence to support the finding of the Appellant that the Appellee acted in other than good faith."

When a circuit or superior court reviews the action of an administrative board pursuant to the Administrative Judicial Review Act, such review is not a trial de novo, but is based solely upon the record of the board's proceedings. Acts 1947, ch. 365, §18, p. 1451, being §63-3018 Burns' 1951 Replacement; *City of Plymouth* v. *Stream Pollution Cont. Bd.* (1958), 238 Ind. 439, 151 N. E. 2d 626. The statute allows that the findings, decisions or determination of such agency may be set aside if: (1) It is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or (2) it is contrary to constitutional rights; or (3) it is in excess of the jurisdiction granted by the statute; or (4) it is contrary to proper statutory procedure; or (5) it is unsupported by substantial evidence. Acts 1947, ch. 365, §18, p. 1451, being §63-3018, Burns' 1951 Replacement, *supra*. The trial court based its decision on reasons one and five above.

Before going into the facts and the evidence upon which they may be found, several principles relevant to administrative fact adjudication should be discussed. In the first place the board, not the court, determines issues of fact. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 118, 119, 26 N. E. 2d 399; *Blue Ribbon Pie Kitchens* v. *Long* (1952), 230

Ind. 257, 103 N. E. 2d 205; See: 28 Ind. L. J. 293, 325. Furthermore the reviewing court cannot weigh conflicting evidence which appears in the record of the Board's hearing for the purpose of detemining for whom it preponderates. *Blue Ribbon Pie Kitchens* v. *Long, supra; Pollock* v. *Studebaker Corporation* (1952), 230 Ind. 622, 625, 105 N. E. 2d 513.[1] In the last cited case concerning the court's jurisdiction to reverse an Industrial Board case because of a lack of substantial evidence the court laid down the following principles:

"... we may reverse the award only if this negative situation appears from the evidence. We have heretofore held that this situation would be shown only: (1) If it should appear that the evidence upon which the Industrial Board acted was devoid of probative value; (2) That the quantum of legitimate evidence was so proportionately meagre as to show that the finding does not rest upon a rational basis or; (3) That the result must have been substantially influenced by improper considerations. ...."

Acts 1947, ch. 365, §18, p. 1451, being §63-3018, Burns' 1951 Replacement, *supra,* provides that the reviewing court shall set out its findings upon the relevant facts as shown by the record.

The record shows that between April 7, 1955, and May 16, 1957, the appellee sold narcotics almost daily, sometimes more than a single prescription on a certain day, to one Claire Davis. These prescriptions were for either tablets of 1/16 grain of Dilaudid or for tablets of 1/4 grain of morphine. On several occasions there were discrepancies between dates and prescription numbers. Also there is evidence that several times the

---

1. Since there are no decisions under this Administrative Review Act concerning §63-3018, Burns' 1951 Replacement *supra,* it has been necessary to resort to cases involving other agencies which are covered by other statutes in regard to judicial review.

prescriptions were filled prior to issuance by a doctor. The Board did not find that any of the prescriptions were filled without the sanction or order of a physician. The record shows that most of the prescriptions were written by a Dr. Waymire who had contacted a Federal Narcotics Agent concerning Miss Davis' situation. After meeting with the federal agent, Dr. Waymire continued prescribing the narcotics for Miss Davis until his death. Several other physicians then continued the prescriptions. The record shows that Miss Davis was suffering from various ailments, having undergone some seventeen operations since 1936, some of which were of a serious nature. The record is devoid of any evidence concerning any criminal action for violation of either state or federal narcotic laws.

The record shows no relevantly important conflict in the evidence, it being cumulative rather than contradictory. From the previously stated facts the Board found that appellee did not act in good faith in carrying out his state and federal statutory duties because of his selling narcotics to a person he knew or should have known was an addict; and that such bad faith constituted "gross immorality."

Keeping in mind the principles stated in *Pollock* v. *Studebaker Corporation, supra,* it can be stated that a Board must be given the benefit of all reasonable inferences that can be drawn from the evidence. Such inferences cannot however be indulged when the facts are insufficient or when common and correct modes of reasoning are not applied.

"... An inference should not be drawn where sufficient facts are wanting, or from facts proved, which are inconsistent with, or repelled by, other facts equally well established. An inference cannot be said to be reasonable, which can only be drawn by a capricious disregard

of apparent truthful testimony, that is in itself probable, and is not at variance with other proved or admitted facts. . . ." *Russell* v. *Scharfe* (1921), 76 Ind. App. 191, 197, 130 N. E. 437; *Milholland Sales, etc., Co.* v. *Griffiths* (1932), 94 Ind. App. 62, 69, 178 N. E. 458; *Mowatt* v. *General Engineering & Sales Co.* (1939), 106 Ind. App. 345, 349, 19 N. E. 2d 488.

In the case at bar the evidence concerning the physicians prescribing the narcotics, apparently in good faith, and the evidence concerning the role of the federal agent, is neither controverted nor at variance with other facts proved. Likewise, there is no controversy nor variance concerning the extremely serious physical maladies afflicting Claire Louise Davis. Under this state of facts it is difficult to see how any other inference than good faith, on the part of the appellee, can be indulged. This is in accord with the "Conclusion of Fact" of the Marion Superior Court.

This court has previously held that "Where the facts are uncontroverted and only one inference can be drawn therefrom, the question . . . becomes one of law for the reviewing court." *Russell* v. *Johnson* (1943), 220 Ind. 649, 660, 46 N. E. 2d 219; *King* v. *Illinois Steel Corp.* (1931), 92 Ind. App. 456, 176 N. E. 161.

With the facts being without substantial controversy, the meaning of "gross immorality" becomes a question of law.

The case of *Indiana Board, etc.* v. *Haag* (1916), 184 Ind. 333, 338, 111 N. E. 178, is a pharmacy case and defines the term "gross immorality" as follows:

"Immorality as defined by Webster is 'The quality of being immoral'; 'an immoral act or practice.' Immoral is defined by the same authority as 'Not moral'; 'inconsistent with rectitude'; 'contrary to

conscience or the divine law'; 'wicked,' 'unjust'; 'dishonest'; 'vicious.' Immorality as defined by lawwriters is 'That which is *contra bonas mores*'; 'an act or practice which contravenes the divine command or social duties.' Immoral, as that which is 'Hostile to the welfare of the general public'; 'wicked'; 'unjust'; 'dishonest'; 'vicious'; 'unjust in practice.' 21 Cyc 1736; *Jones* v. *Dannenberg Co.* (1900), 112 Ga. 426, 430, 37 S. E. 729, 52 L. R. A. 271. 'Gross' as used to modify the word 'immorality' does not mean great or excessive, but rather wilful, flagrant, or shameless, showing a moral indifference to the opinions of the good and respectable members of the community. *Moore* v. *Strickling, supra;* 4 Words and Phrases 3167."

The lack of good faith or the presence of bad faith would seem to be an essential element in placing facts proven within the above definition. In the Haag case the pharmacist was found to have engaged in grossly immoral acts. The pharmacist had sold liquor in the course of his business without any license to do so and without prescription. Neither of these elements are present in the case at bar.

As was stated before, there is no finding by the Board of criminal violation or prosecution, but merely a failure to carry out the intent of the narcotic act because of the large amount of narcotics sold during the time mentioned. In support of its position appellant cites several cases decided under the Federal Narcotic Laws. In *United States* v. *Curtis,* D. C. N. D. N. Y., (1916), 229 Fed. 288, the druggist without knowing the doctor or any other circumstances filled a prescription for one hundred one quarter grain morphine tablets. The most ever sold to Louise Davis upon the present record is thirty-six tablets, with knowledge of the doctor and the circumstances. The case did hold as appellant suggests, that the filling of a very large order for narcotics

by a dealer, unless the circumstances show to contrary, is not actually the filling of a true prescription. Such a holding would imply one of two things, (1) that the prescription was not ordered by a physician, or (2) that the physician so ordering it was acting in bad faith. Neither of these elements is present here.

In *United States* v. *Brandenburg,* 3 Cir., (1946), 155 F. 2d 110, a physician prescribed as many as thirty grains of morphine to persons he had not even examined, this being a definite indication of bad faith on his part. In *Jin Fuey Moy* v. *United States* (1920), 254 U. S. 189, 41 S. Ct. 98, 65 L. Ed. 214, and *Webb* v. *United States* (1919), 249 U. S. 96, 39 S. Ct. 217, 63 L. Ed. 497, physicians and druggists were involved in actual "dope rackets" involving enormous amounts of narcotics. In both cases conspiracy was an element.

Most of the federal narcotic cases involving "bad faith" are concerned with physicians rather than druggists. (For discussion of what amounts to good or bad faith on the part of a physician see: *United States* v. *Anthony, D. C. S. C. Cal.* (1936), 15 F. Supp. 553, 558; *Linder* v. *United States* (1925), 268 U. S. 5, 45 S. Ct. 446, 69 L. Ed. 819; 72 C. J. S., Poisons, §11, pp. 190, 191. It is beyond our comprehension how a druggist could be acting in bad faith when filling a prescription of a physician who is acting in good faith in the course of his practice.

The finding and judgment of the Marion Superior Court is therefore affirmed.

Achor, Arteburn and Landis, JJ., concur.

Bobbitt, C. J., not participating.

NOTE.—Reported in 172 N. E. 2d 62.