## STATE OF INDIANA *v.* WHITNEY

[No. 1-677A133. Filed June 13, 1978. Rehearing denied August 16, 1978. Transfer denied November 6, 1978.]

*Theodore L. Sendak*, Attorney General of Indiana, *Charles W. Vincent*, Deputy Attorney General, *Terry G. Duga*, Deputy Attorney General, for appellant.

*Joseph B. Barker*, of Martinsville, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — This is an action for false arrest, false imprisonment and personal injury resulting from negligence in which plaintiff-appellee John R. Whitney recovered a money judgment of $116,000 against defendant-appellant State of Indiana, as the result of an altercation between Whitney and an off-duty Indiana State Policeman named William C. Krueger. The State appeals from the denial of its motion to correct errors.

## FACTS

The facts most favorable to Whitney are as follows: On April 12, 1975 shortly after 1:00 a.m. Whitney and his wife, Carmalita were driving south on State Road 67 at approximately 55 to 60 miles per hour. As they crossed the road which led to Mooresville, a car headed toward Mooresville almost hit the back of Whitney's car. That car quickly turn-

ed around and began to follow Whitney's car very closely. After a short distance Whitney pulled his car to the side of the road when he saw little red blinkers flashing behind the grill of the car which was following him.

After stopping his car Whitney got out and walked toward the man, who was dressed in civilian clothes and who was later identified as Krueger. Whitney noticed that Krueger's car was unmarked and was bearing private license plates, not the yellow and black plates which are issued to state owned cars. He also noticed a woman, who was later identified as Krueger's wife, sitting on the passenger's side of Krueger's car. Whitney asked Krueger why had been stopped. Krueger told Whitney that he was under arrest for running a red light. When Whitney told Krueger that he didn't believe that Krueger was really a policeman Krueger pulled his gun out and pointed it at Whitney's belly. After seeing that the gun Krueger was holding was not a standard police weapon, Whitney, thinking that Krueger was just drunk, got into his car and drove on to his home. At no time did Krueger attempt to show his badge or give his name. Krueger radioed the State Police Station at Bloomington and asked for the assistance of a uniformed officer. Krueger then followed Whitney to Whitney's home.

After Whitney had pulled into his driveway Krueger pulled up behind Whitney's car, and both drivers got out and approached each other. In compliance with Krueger's request Whitney handed Krueger his driver's license. When Krueger refused to give the license back to Whitney the two men agreed to fight over it. As Whitney was taking off his coat Krueger hit him on the back of the head with his gun. Whitney turned, fell forward against Krueger, and grabbed Krueger's hand to push down the gun, which was then aimed at the center of Whitney's chest. The gun went off, and the bullet hit Whitney in the front pelvic area and exited near his scrotum.

Krueger physically sat on the handcuffed Whitney until uniformed officers arrived. An ambulance was summoned and Whitney was taken to the hospital where he spent four days in the intensive care unit. Prior to the incident described above Whitney was able to enjoy a normal sex life; subsequent to the incident Whitney was unable to have an erection or to carry on normal sexual relations.

Whitney originally brought this action against both Krueger and the State. After the State admitted in its answer that Krueger was acting for and in behalf of the State as its agent, the court granted Krueger's motion to dismiss.

## *ISSUES*

The issues which have been presented to this court on appeal are as follows:

1.   Whether the trial court erred in admitting into evidence plaintiff's exhibits 7, 8 and 9, which were photographs of the wound received by Whitney.

2.   Whether the trial court erred in allowing Whitney over the State's objection to relate the conversation between him and the physician examining him at the State's request.

3.   Whether the trial court erred in refusing to admit into evidence the hospital records pertaining to Whitney's treatment upon Whitney's objection the same constituted hearsay, even though Whitney had admitted the authenticity thereof.

4.   Whether there was sufficient evidence of probative value that Whitney's injury was the cause of the disability claimed by him.

5.   Whether the damages awarded Whitney were excessive upon his failure to prove the same with reasonable certainty.

6.   Whether defendant was immune from liability pursuant to IC, 1971, 34-4-16.5-3(7) (Burns Supp. 1977).

## *DISCUSSIONS AND DECISION*

*Issue One*

The State contends that the trial court erred in admitting into evidence over the State's objection Whitney's exhibits 7, 8, and 9 which were photographs of Whitney's wound. The State contends that such photographs, which were taken 1-1/2 months after the shooting, are not relevant in that they depict neither the condition of the wound as it originally appeared, nor the final condition of the wound after healing had taken place. We do not agree with the State's contention.

The photographs of Whitney's wound were relevant for the reason that they helped the jury to visualize the trajectory of the bullet. In Indiana the admission or rejection of photographs into evidence is discretionary with the trial court. We can reverse only when it is apparent that the trial court abused its discretion. See *Dill v. Dill* (1949), 120 Ind.App. 61, 88 N.E.2d 396. We find no such abuse in the case at bar.

*Issue Two*

The State contends that the trial court erred in permitting Whitney to testify over the State's objection that the doctor, who examined Whitney on behalf of the State, said the following on page 185 of the transcript:

". . . Well, Mr. Whitney, if you aren't aware of it there's no way . . . of . . . telling whether you can [have an erection] or not. No examination in the world'll tell you this. . . ." (Our insert)

The State objected to Whitney's testimony on the basis that it was hearsay.[1] We agree that Whitney's statement was hearsay,[2] but we hold that its admission was harmless. Its admission, therefore, did not constitute reversible error. See Ind.Rules of Procedure, Trial Rule 61.

In fact, the record shows that the State's position on the feasibility of determining Whitney's impotence through examination was not materially different from Whitney's position as it was evidenced by the hearsay statement to which the State objected. On page 312 of the transcript the State asked the following question:

"Q. Wasn't it a fact, Mr. Whitney, that he said something to the effect that if he could not cause an erection in the laboratory . . . it still wouldn't prove whether or not you were impotent?

A. I don't remember him sayin' it."

1. Hearsay is an out-of-court statement offered in court to prove the truth of the matter contained therein. See *Blue v. Brooks* (1973), 261 Ind. 338, 303 N.E.2d 269.

2. Whitney argued that the doctor who examined him on behalf of the State was an agent of the State. Therefore, Whitney contended, the conversation in effect, took place in the presence of the State and was not hearsay. We need not address the merits of Whitney's contention for the reason that Whitney failed to cite to this court any authority or to give this court cogent argument which would support his contention that the doctor was an agent of the State. See Ind.Rules of Procedure, AP. 8.3(A)(7).

Both Whitney and the State have indicated in a general way that the results of a medical examination to determine impotency are likely to be inconclusive. We cannot see how the State was prejudiced by Whitney's testimony.

*Issues Three*

The State contends that the court erred in not admitting into evidence certain hospital records which showed, among other things, that Whitney was intoxicated on the night of the shooting. The State contends that the hospital records were not hearsay and were relevant.

Without discussing the merits of the State's contentions concerning hearsay and relevancy we must hold that the hospital records were properly excluded by the trial court for another reason. At the pre-trial conference the parties orally agreed that neither party would present medical evidence. The State understood the oral agreement to mean that no expert medical testimony from doctors would be presented, but that medical and hospital records could be introduced into evidence. Whitney and his attorneys understood the pre-trial agreement to mean that no medical evidence, whether it be the expert testimony of a doctor, or the records kept at the hospital, was to have been admitted into evidence. Because of the misunderstanding of the agreement the trial court felt that in light of the circumstances the fairest court of action was to exclude the hospital records. The court's decision represented an exercise of discretion.[3] We have seen nothing which convinces us that the trial court abused its discretion. Therefore no reversible error was committed.

*Issue Four*

The State contends that Whitney presented no evidence which proved that his injury caused his impotency. We disagree.

From the fact that the bullet passed through Whitney's pelvic area near his genital organs and exited through the scrotum, and from the fact that Whitney was able to have an erection before the shooting but not after, it was reasonable for the jury to infer that the injury resulting from the shooting caused Whitney's impotency. In that its

---

3.  See *Dill v. Dill, supra.*

decision was based upon a reasonable inference we cannot say, as a matter of law, that the jury erred.

*Issue Five*

The State contends that the damages were excessive. It is the State's contention that because of the sensitive nature of Whitney's disability the passions of the jury were aroused in Whitney's favor, and, as a result, the damages awarded were inordinately high and were based upon improper considerations.

In *Indiana & Michigan Electric Co. v. Stevenson* (1977), 173 Ind.App. 329, 363 N.E.2d 1254, 1262, this court said:

"On appeal, this court will not reverse an award of damages as being excessive unless the damages appear so unreasonable as to convince this court that the jury was motivated by passion or prejudice. *City of Evansville v. Cook* (1974), [162] Ind. App. [465] 319 N.E.2d 874."

The jury's verdict in the case at bar does not indicate whether liability was found for false imprisonment, false arrest, negligence, or any combination of the three. In assessing damages it was proper for the jury to consider all injuries incurred by Whitney, not just the impotency which subsequently developed. Whitney unjustly suffered humiliation and restriction of freedom, as well as personal injury and subsequent disability. Under the circumstances of the case at bar, we are not convinced that the jury was motivated by passion or prejudice. Therefore, we hold that the damages were not excessive.

*Issue Six*

The State contends that it is immune from liability in the case at bar because of the provisions found in IC 1971, 34-4-16.5-3(7) (Burns Supp. 1977), which reads as follows:

"A governmental entity or an employee acting within the cope of his employment is not liable if a loss results from:

* * *

(7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforcement constitutes false arrest or false imprisonment;"

The State argues that since Krueger did not actually arrest Whitney, but that such arrest was effected by the uniformed officers who arrived later, no false arrest or false imprisonment occurred.

IC 1971, 9-4-8-1 (Burns Code Ed.) provides:

"No peace officers shall have any authority to arrest any person for any violation of any of the laws of this state regulating the use and operation of motor vehicles on the public highways of the state, or any of the ordinances of any city or town thereof, regulating the use and operation of motor vehicles on the public highways of this state, unless, at the time of such arrest, such officer is wearing a distinctive uniform and a badge of authority, or is operating a motor vehicle which is clearly marked as a police vehicle, which will clearly show him or his vehicle to casual observations to be an officer. The provisions of this section shall not be construed to apply to any officer making any such arrest when there is a uniformed officer present at the time of such arrest, nor shall such provisions apply to any regular police officer of any city or town, within the limits of his jurisdiction. [Acts 1927, ch. 109, § 1, p. 287; 1929, ch. 22, § 1, p. 43; 1969, ch. 144, § 1, p. 310.]"

Since Krueger was not dressed in his police uniform since Krueger's car was unmarked, Krueger was without authority to arrest Whtiney for a traffic violation. An arrest under such circumstances would be an illegal arrest and such arrest could reasonably be construed to constitute a false arrest or false imprisonment.

IC 1971, 35-1-17-1 (Burns Code Ed.) defines arrest as follows:

"Arrest is the taking of a person into custody, that he may be held to answer for a public offense. [Acts 1905, ch. 169, § 120, p. 584.]"

In the case at bar the evidence clearly shows that Krueger told Whitney that he was under arrest, Krueger kept Whitney's driver's license in order to restrict Whitney's movement until a uniformed officer arrived, and Krueger even resorted to physical restraint to keep Whitney from taking his driver's license and leaving. Such conduct would be sufficient to constitute an arrest. Since such arrest was illegal, the State is not immune from liability.

The State also argues that the presence of the red flashing lights behind the grill of Krueger's car were sufficient markings to identify

that car as a police car, and its driver as a policeman. We disagree. If the State's argument were correct any person with a small amount of money and a little electrical training could purchase and install one or more red lights in his automobile, and impersonate a police officer, wreak much havoc upon the motoring public, and go virtually unnoticed by law enforcement authorities. By itself a red light is not enough to identify an automobile as a law enforcement vehicle and its driver as a policeman.

Police officers are equipped with a distinctive uniform, a badge, and clearly marked patrol cars in order to make them easily identifiable to the general public. These distinctive items are symbols of the authority which the police officer possesses. Citizens are much more willing to submit to a policeman's authority, if they are reasonably certain that the person asserting that authority is indeed a law enforcement officer. The case at bar illustrates the very purpose behind requiring policemen to possess readily identifiable symbols of authority. Whitney testified that he thought that Krueger was just a drunk impersonating a policeman. The wisdom of the Indiana Legislature in enacting IC 1971, 9-4-8-1, *supra*, is self evident from the event which forms the basis of this suit.

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 377 N.E.2d 652.