LINDA DUBREUIL AND REGINA WILSON *v.* TREVOR PINNICK

[No. 1-578A124. Filed December 20, 1978. Rehearing denied January 29, 1979. Transfer denied June 27, 1979.]

*Darrell F. Ellis, Rhys D. Rhodes,* of Paoli, for appellant.

*Lewellyn H. Pratt, Applegate & Pratt,* of Bloomington, for appellee.

ROBERTSON, J. — Defendants-appellants Linda Dubreuil (Dubreuil) and Regina Wilson (Wilson) appeal a jury award in favor of plaintiff-appellee Trevor Pinnick (Pinnick). We affirm.

Pinnick brought this action for malicious prosecution and false imprisonment. Defendants contend that the verdict was not supported by sufficient evidence and was contrary to law.

In determining whether a judgment is supported by sufficient evidence, this Court neither weighs the evidence nor resolves questions of credibility of witnesses. Rather, this Court views only the evidence most favorable to the appellee, together with all logical inferences flowing therefrom. *Rieth-Riley Construction Co., Inc. v. McCarrell* (1975), 163 Ind.App. 613, 325 N.E.2d 844. In addition, it is only where the evidence leads to but one conclusion and the trial court has reached an opposite conclusion, that its decision will be disturbed as being contrary to law. *Chaney v. Tingley* (1977), [174] Ind.App. [191], 366 N.E.2d 707.

*Utica Mutual Insurance Company v. Ueding* (1977), 175 Ind.App. 60, 370 N.E.2d 373, 376. If there is sufficient evidence to support the verdict on either theory, the verdict will not be disturbed. *See Brockman v. Detroit Diesel Allison Division, etc.,* (1977), 174 Ind.App. 240, 366 N.E.2d 1201; *Utica, supra.*

As properly construed, the evidence adduced at trial established that Pinnick was the minister of the Antioch Church in French Lick, Indiana, for several years. The defendants were associated with this church which conducted but two meetings per year. Apparently, during the meetings in September of 1973 and May of 1974, the defendants found themselves

at odds with Pinnick over various church issues. Prior to the September 8, 1974 meeting, Dubreuil and Wilson sought the advice of counsel concerning the possibility of getting a restraining order to prevent Pinnick's attendance. Dubreuil informed her attorney that she would be afraid and threatened by Pinnick's presence because of his alleged violent propensities. Counsel informed her that no restraining order could be had, but that she could procure a surety of the peace bond from the justice of the peace. Thereafter, Dubreuil filed an affidavit pursuant to IND. CODE 35-1-5-1, and a surety bond issuance was docketed.

September 8th arrived and Pinnick performed a morning service. Wilson, believing Dubreuil had obtained a restraining order, went to the courthouse to secure a copy thereof. *However, no restraining order was sought or issued, nor had a warrant been issued for the surety bond proceeding.* Nevertheless, Wilson got a copy of the only document on file (Dubreuil's affidavit), believing it to be a restraining order.[1] She then sought the assistance of a deputy sheriff who promptly arrested Pinnick on the misapprehension that the affidavit was either a warrant or a restraining order.

In *Stine v. Shuttle* (1962), 134 Ind.App. 67, 186 N.E.2d 168, we defined false imprisonment as:

It is the general rule of law that a tort action for ... false imprisonment, is based upon deprivation of one's liberty without legal process that may arise when arrest or detention is without warrant or a warrant that charges no offense ... and all that must be averred or shown [is] the deprivation of one's liberty without legal process. [Citations omitted.]

124 Ind.App. at 72, 186 N.E.2d at 171. *Accord Brickman v. Robertson Brothers Department Store* (1964), 136 Ind.App. 467, 202 N.E.2d 583.

Under the foregoing facts, we believe the evidence was sufficient to

---

1. Dubreuil's affidavit was entitled on the cover "Affidavit For Surety Of The Peace." The contents recited:

Linda Dubreuil being duly sworn says: That she has just cause to fear, and does fear, that one Trevor Pinnick may cause some disturbance to people in and near the plaintiff in a manner so as to cause some one or more people mental or bodily injury, *and request an order* for the said defendant to keep off the premises of said church on the date of Sunday, September 8th, 1974.

(Emphasis added.)

establish that Pinnick was deprived of his liberty unlawfully. *See Brickman, supra.* A defendant may be brought before the court in a surety of the peace proceeding in one of two ways. First, if an affidavit is filed, the justice of the peace must issue a warrant to be served on the defendant, and cause the defendant to be arrested and brought before him for trial. IC 35-1-5-1, *supra.* Secondly, a justice of the peace may require a defendant to post a bond if a breach of the peace is committed in his presence. IC 35-1-5-13. In this case no warrant was issued and the uncontradicted evidence established that Pinnick did not cause any type of disturbance on September 8. These facts, coupled with the deputy sheriff's misapprehension concerning the legal effect of the affidavit, leads to the conclusion that the deputy did not have the authority to arrest Pinnick. Hence, the arrest was illegal and could therefore be reasonably construed as false imprisonment. *See State v. Whitney* (1978), 176 Ind.App. 615, 377 N.E.2d 652. As such, we hold there was sufficient evidence to support a finding of false imprisonment.

Defendants also contend that there was insufficient evidence to render them jointly liable. This contention is without merit. In *Brickman, supra,* we declared:

It is also well-established law that, as a general rule, 'all those who, by direct act or indirect procurement, personally participate in or proximately cause the unlawful restraint or detention are liable therefor as joint-tortfeasors, jointly and severally, regardless of the degree or extent of the individual activity, and each is so liable although he did not know that the detention was illegal in its inception. * * *' [Citations omitted.]

136 Ind.App. at 472-3, 202 N.E.2d at 586. Thus, the gravamen of analysis is whether the jury could find that Dubreuil and Wilson, by direct act or indirect procurement, were responsible for the deprivation of Pinnick's liberty without legal process.

Dubreuil's affidavit was filed pursuant to IC 35-1-5-1, *supra,* which provides:

AFFIDAVIT. When complaint is made in writing, upon oath, before any justice of the peace, that the complainant *has just cause to fear, and does fear, that another will destroy or injure his property, or injure, by violence, himself or some member of his family or ward,* and that he makes such affidavit only to secure the protection of

the law, *and not from anger or malice,* any justice with whom such affidavit is filed shall issue his warrant, and cause the person complained of to be arrested and brought before him for trial.

(Emphasis added.)

We think Dubreuil's testimony is significant with respect to her motive in filing the affidavit. She openly admitted that they did not care if Pinnick came any other day, but that on September 8 they "wanted to have a meeting and see whether the congregation wanted to retain him [Pinnick] as minister." Dubreuil's testimony did not reveal any direct evidence that she had a reasonable cause to believe Pinnick would injure her or others. As such, we believe the jury could properly infer that Dubreuil filed the affidavit because of her ill-feelings towards Pinnick and for the purpose of voting him out as minister, but not because she had "just cause to fear" Pinnick. Of course, an improper motive or malice is not an element of false imprisonment. *See American Express Co., et al. v. Patterson* (1881), 73 Ind. 430. Also, a person should not generally be held liable for the mere filing of an affidavit. But where, as here, the legislature has forbidden the execution of an affidavit out of "anger or malice," we believe a finding of an improper motive or malice on the part of Dubreuil is relevant to the determination of whether the conduct of Dubreuil was indirect procurement of Pinnick's arrest. The jury could find that the *fact* the affidavit was filed in violation of IC 35-1-5-1 was causally related to the arrest of Pinnick in a manner sufficient to impose liability. In sum, we do not assert that Dubreuil's liability is based on malice as an element of the tort; rather, we are of the opinion that motive was relevant in establishing the fact of *the indirect procurement of the deprivation of Pinnick's liberty without legal process.* As such, we are unable to say, as a matter of law, that the jury could only have found Dubreuil's conduct so *de minimus* as to excuse her from liability.

With respect to Wilson, her testimony revealed that:

"Q. Now Mrs. Wilson, would you tell the Court what your part was in the September 8th 1974 arrest of Mr. Pinnick?

A. My sister [Dubreuil] had obtained the restraining order to keep him from appearing at the church that particular time.

\* \* \*

Q. But you believe[d] there was an order for him not to appear at church and have him arrested right?

A. That's right.

Q. And you called the police, did you?

A. Mr. Stroud was already there and he told me that the next procedure was to go back to Mr. Shortridge and get a copy of the restraining order, to pick up a policeman, and go back out to the church and arrest.

Q. Which you did?

A. Which I did.

Q. Even though he was causing no problems at all?

A. Not at the time.

Q. Okay, now he caused problems before that time, the same day?

A. Not at that time on that day.

Q. Right. And so you went to the Justice of the Peace office and got a copy of Linda's affidavit it looks like, isn't it?

A. Apparently so.

Q. And then the Sheriff arrested him, right?

A. Someone arrested him. I don't know who.

Q. And it turns out there was no reason to arrest him because there was no order, no warrant, no nothing, right?

A. If there wasn't, it was of no fault of my sister and myself.

Q. Okay, because you tried to do it right and have him arrested right, right?

A. We tried to take care of all the paper work right so far as we're able."

We believe a reasonable inference, in favor of Pinnick, could be drawn by the trier of fact that Wilson actively sought out and procured the assistance of the deputy with a view towards the arrest of Pinnick. In short, it would be reasonable to infer that Wilson did, by her words and/or course of conduct, "request" the arrest of Pinnick. Furthermore, even if Wilson thought the arrest would be consummated in full accordance with the law, liability will nonetheless attach "although [the defen-

dant] did not know the detention was illegal in its inception. . ." *Brinkman, supra,* 136 Ind.App. at 473, 202 N.E.2d at 586. Hence, we believe the jury could reasonably find that the participation of Wilson in Pinnick's arrest was sufficient to impose liability therefor.

From the foregoing, therefore, there were a trilogy of actors — Dubreuil, Wilson and the deputy sheriff. Again, the jury could have found that (1) Dubreuil filed the affidavit out of her ill-feelings towards Pinnick (2) Wilson misunderstood the legal effect of the affidavit and "requested" Pinnick's arrest, and (3) the deputy sheriff illegally arrested Pinnick. We cannot agree with the assertion that liability should be visited solely upon the deputy. The conduct of Dubreuil and Wilson was not, as a matter of law, so remote as to preclude the trier of fact from finding their active participation as being at least "indirect procurement" which resulted in the unlawful restraint of Pinnick.

Lastly, we believe our appellate function prevents us from reversing the court below on the grounds of excessive damages. In *Kavanagh v. Butorac* (1966), 140 Ind.App. 139, 221 N.E.2d 824, we declared that:

By nature, injuries personal to the individual, are incapable of a more definite rule for measurment [sic] of damages. Each action is unique and it must be so treated and determined on the facts peculiar to that matter. Because our law seeks to individualize the solution to the problem of properly compensating the victim of torts, no overall expedient applies in every case.

For a formula then, our common law sets only the general guidelines for compensating the victim, each in its own way to be considered by the trier of facts and weighed to determine what the total compensation will be. Because of this personal nature of each case and since the decision is unique to the particular set of facts our courts have said the trier of facts is to be given 'sound discretion,' and 'liberal discretion' where damages cannot be defined and calculated with mathematical certainty or by any exact standard. [Citations omitted.]

140 Ind.App. at 145, 221 N.E.2d at 828. In a tort action, "[t]he jury has the right to use human experience in determining anguish, anxiety and other suffering both physical and mental . . . ." *New York, Chicago and St. Louis Railroad Company v. Henderson* (1957), 237 Ind. 456, 477, 146

N.E.2d 531, 543. Further, in an action for false imprisonment, the plaintiff may recover for wounded pride and humiliation. *Harness v. Steele, by Next Friend* (1902), 159 Ind. 286, 64 N.E. 875. Since we will not set aside a verdict on the basis of excessiveness unless it appears "that the amount fixed by the jury is so large that it cannot be explained upon any reasonable hypothesis other than prejudice, passion, partiality, corruption, or some improper element taken into account," *Safety Cab, Inc. v. Ferguson* (1965), 137 Ind. App. 644, 654, 205 N.E.2d 827, 833, we are unwilling to substitute our judgment for that of the jury. *See also State, et al. v. Collier* (1975), 165 Ind.App. 239, 331 N.E.2d 784.

For all the foregoing reasons, therefore, the trial court is affirmed.

Affirmed.

Lowdermilk, J. concurs.

Young, J. (sitting by designation) dissents with opinion.

## DISSENTING OPINION

YOUNG, J. — I dissent. Neither the claim for false imprisonment nor that for malicious prosecution is supported by sufficient evidence. Ind. Rules of Procedure, Trial Rule 59(A)(4). For this reason judgment should be entered for the defendants. Alternatively, I would reverse nonetheless for the reason that the award of damages is not supported by sufficient evidence.

The testimony of the witnesses is unfortunately vague with respect to many of the circumstances giving rise to this action. Keeping this in mind, and considering the evidence in a light most favorable to the appellee, the record discloses the following information. This lawsuit was generated by a church feud. Plaintiff Trevor Pinnick, the minister, was at the center of the dispute. There is repeated testimony in the record that Pinnick and others carried on the controversy with swearing, shouting, and shoving. During one argument, defendant DuBreuil's husband sought to remove Pinnick from the church building by force.

In order to forestall a similar disturbance at a congregational meeting, defendant DuBreuil initiated a proceeding for surety of the peace. IC 1971, 35-1-5-1 (Burns Code Ed.). DuBreuil had consulted an attorney for

advice on this procedure. DuBreuil's goal was to prevent Pinnick from attending the church meeting of September 8, 1974. Defendant DuBreuil executed the necessary affidavit to initiate the proceeding. *See* IC 35-1-5-1, *supra.* In the affidavit she stated that

> "Trevor Pinnick may cause some disturbance to people in and near the plaintiffs in a manner so as to cause some one or more people mental or bodily injury, and request an order for the said defendant to keep off the premises of the said church on the date of Sunday, September 8th, 1974."

A copy of the affidavit was sent to Pinnick by the attorney. However, no other steps were taken prior to September 8, 1974, to complete the surety proceeding.

On September 8, Preacher Pinnick appeared at the church. Defendant Wilson, apparently under the impression that the surety proceeding had been completed, warned Pinnick that he would be arrested. When Pinnick did not leave, Wilson secured a copy of the affidavit and gave it to a law officer.

For reasons not apparent in the record, the officer misapprehended the legal import of the affidavit. He erroneously believed that the affidavit, by itself, was sufficient justification to arrest Pinnick. Pinnick was therefore escorted from the church by the officer and placed in jail for forty-eight minutes. This detention was the alleged false imprisonment.

I would refuse to impose liability for the detention upon Wilson. The only reasonable conclusion based upon the evidence is that Wilson wanted to impose upon Pinnick no sanction other than that which could be secured by due course of law. Any " 'request' " to the officer must be viewed in this context. The circumstances of this incident establish that the decision of the officer to arrest Pinnick carried with it Wilson's belief that such arrest would be made only if the arrest could lawfully be carried out. Her effort in this regard was thwarted solely because the law officer, from whom she sought assistance, misapprehended the affidavit. This error was his not hers. For the reasons given below, the default of this law officer should not be visited upon the defendants.

The majority opinion quotes a portion of Wilson's testimony and concludes that on the basis of the testimony a jury could reasonably infer

that Wilson " 'requested' " the arrest of Pinnick. I disagree. By resorting to an asserted inference, the majority concede that there is no direct evidence that Wilson requested any arrest. Moreover, the inferred request is questionable because Wilson testified that, "I don't know who" arrested Pinnick. The asserted inference is also weakened because the existence of the fact sought to be inferred (i.e., that Wilson requested Pinnick's arrest) could so easily have been resolved by a simple, direct question from Pinnick's attorney to Wilson. In short, the inference is suspect because Pinnick's attorney sidestepped an easy opportunity to elicit strong evidence. "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse." *Interstate Circuit, Inc. v. United States* (1939), 306 U.S. 208,226. Furthermore, the majority recognizes that the asserted inference may only rest on the "course of conduct" of Wilson. What conduct?

A reasonable inference is one which is probably right. *Puckett v. McKinney* (1978), 175 Ind.App. 673, 373 N.E.2d 909, 912. The asserted inference, that Wilson requested Pinnick's arrest, can be drawn only by disregarding the uncontradicted and direct evidence that Wilson did not even know who arrested Pinnick. " 'An inference cannot be said to be reasonable which can only be drawn by a capricious disregard of apparent truthful testimony, that is in itself probable, and is not at variance with other proved or admitted facts.' " *Indiana Bd. of Pharmacy v. Horner* (1961), 241 Ind. 326, 172 N.E.2d 62, 66. For these reasons the majority is in error.

In a final effort to support the asserted inference, the majority quote *Brickman v. Robertson Bros. Dept. Store* (1964), 136 Ind.App. 467, 202 N.E.2d 583, to support the majority's contention that Wilson would be liable for her alleged participation in the detention even though she did not know the detention was illegal in its inception. *Id.,* 202 N.E.2d at 586. The majority's interpretation of *Brickman* is misadvised. *Brickman* holds only that *if* a defendant has in fact participated in the detention, then the defendant may be liable therefor even though he did not know the detention was illegal. The proposition which the majority extracts from *Brickman* is predicated upon actual participation in the detention. If this predicate is shown, then *Brickman* would hold a defendant liable even though the defendant did not know the detention was illegal in

its inception. However, in the case at hand the very predicate itself is in issue. Namely, did Wilson participate at all in the detention? The majority's quotation from *Brickman* does not concern this predicate. The majority's quotation concerns only the consequence which may flow from the existence of the predicate. Thus the majority's reliance on *Brickman* is misadvised.

Furthermore, the law officer's mistake gives rise to a problem which is not addressed in the majority opinion. Namely, when a private citizen such as Wilson calls for the assistance of a law officer, is such a request to be made only at the citizen's peril for fear that blunders by the officer will impose liability upon the citizen? I would hope not. It should not be the policy of the law to impose liability upon a citizen when an alleged injury results solely from an error of the officer. A contrary conclusion, such as that reached by the majority, goes far to discourage citizens from seeking the assistance of law officers and the judicial process.

There is an even more compelling reason to reverse the judgment against DuBreuil. Nothing in the record shows me that DuBreuil asked the officer to arrest Pinnick. How then can she be found liable for the alleged false imprisonment? The majority opinion appears to give two bases for imposing liability upon DuBreuil.

First, the majority argue that DuBreuil, in executing the affidavit, did not have "reasonable cause to believe" that Pinnick would injure her or Wilson. However, DuBreuil's motive in executing the affidavit is irrelevant. Regardless of whether she lacked "reasonable cause" or even though she may have possessed malice, it would make no difference. Neither "reasonable cause" nor "malice" is an element of the tort of false imprisonment. W. PROSSER, LAW OF TORTS 48 (4th ed. 1971); 35 C.J.S. *False Imprisonment* § 7, p. 629 (1960); *American Express Co. v. Patterson* (1881), 73 Ind. 430, 437; *Boaz v. Tate* (1873), 43 Ind. 60, 66; *Colter v. Lower* (1871), 35 Ind. 285, 286. To the extent that the majority impose liability upon DuBreuil because of her motive in executing the affidavit, then it would appear that the majority have contravened the foregoing authority and have created a new tort.

Second, the majority argue that the defendants are jointly liable. However, DuBreuil would be liable jointly with Wilson only if DuBreuil

personally participated in the detention of Pinnick or engaged in its indirect procurement. 35 C.J.S. § 36, *supra*. DuBreuil did not personally participate—she never asked anybody to detain Pinnick. Also, the mere execution of an affidavit should not be sufficient to hold her liable for "indirect procurement" when some person unknown to her later blunders and misapprehends the affidavit. *Brickman v. Robertson Bros. Dept. Store* (1964), 136 Ind.App. 467, 202 N.E.2d 583, cited by the majority, does not call for a contrary result. *Brickman* held only that an employer may be liable for the acts of its employee; a basic rule of agency. Here we have different persons doing different things at different times and their only commonality is that they are sisters. I cannot read *Brickman* to command the conclusion that liability for false imprisonment may be imputed on the basis of sisterhood to the author of an affidavit which was not at all executed for the purpose of imprisoning Pinnick. Consider, for example, 35 C.J.S. § 28b(1)(b), *supra*, p. 667, wherein it is said that

> "[a] party who merely files an affidavit for a capias and leaves the matter wholly in the hands of the justice to issue the writ or not as he sees fit, and who neither aids nor advises as to any future steps or action in the matter, is not liable to a person who may thereafter be arrested on a capias issued by the justice."

For all these reasons there is insufficient evidence to support a verdict of false imprisonment.

I turn now to alleged malicious prosecution, the alternative theory upon which the jury was instructed. It is settled law that a plaintiff suing for malicious prosecution must show that the underlying lawsuit terminated in his favor. *Terre Haute & I. R. R. v. Mason* (1897), 148 Ind. 578, 46 N.E. 332. However, the record in the case at bar simply fails to disclose that the surety proceeding has terminated. Much less does the record indicate that it terminated in Pinnick's favor. Consequently, there is insufficient evidence upon which to justify a verdict of malicious prosecution.

There being insufficient evidence to support either theory against these defendants, this cause should be reversed. TR. 59(A)(4). Further, I would reverse because there is no evidence of any damage other than nominal.

In this cause, Pinnick is theoretically entitled to four types of damage. These are nominal, general, special, and punitive. The very nature of false imprisonment or malicious prosecution could justify an award of nominal damages. C. MCCORMICK, LAW OF DAMAGES §§ 20 & 107 (1935); PROSSER, *supra*, at 42. General damages may be recovered where there is evidence to support them. 35 C.J.S. § 64, *supra*; MCCORMICK, §§ 107 & 108, *supra*. Special damages were not pleaded and may not be recovered. MCCORMICK §§ 107 & 108, *supra*; TR. 9(G). Where malice is present, then punitive damages may be recovered. *Boaz v. Tate* (1873), 43 Ind. 60,66. The authorities are also agreed that punitive damages for alleged false imprisonment are not properly awarded where the alleged injury is merely the result of a mistake or where malice is absent. PROSSER, *supra*, at 44; 35 C.J.S., *supra,* § 67b.

In the case at bar, the award of $10,000 obviously represents more than mere nominal damages for the alleged forty-eight minute detention. Pinnick simply failed to offer evidence of any actual damages. The majority opinion cites some case law to support the proposition that the jury may use discretion to measure damages. This I do not deny. However, in the case at hand Pinnick failed to prove any actual damage in the first instance. Consequently, because there is no evidence even of the existence of such damage, the majority's discussion of the measure or the amount of such damage is not on point.

As already stated, the award cannot represent special damage because none was either pleaded or proved. The only remaining alternative is that the jury's award represents punitive damages. However, punitive damages are improper in this case. This fiasco resulted entirely from the blunder of the law officer. An award of such damages against Wilson and DuBreuil should not be premised upon the mistake of a third person. See the authorities cited *supra*. Neither Wilson nor DuBreuil possessed malice sufficient to justify an award of punitive damages. Simply stated, the ill-will and hard feelings which accompany church dissension and which were fostered by Pinnick himself are not equivalent to the malice sufficient to justify an award of punitive damages.

For all these reasons I must dissent.

NOTE—Reported at 383 N.E.2d 420.