**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 23 2013, 8:47 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**BESSIE M. DAVIS**
Gary, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NATHAN ABBOTT, STATE OF INDIANA AND INDIANA STATE POLICE, | ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) ) | No. 45A03-1204-CT-167 |
| MICHAEL MITCHELL and LEONARD LOVE, | ) ) ) | |
| Appellees-Plaintiffs. | ) ) | |

APPEAL FROM THE LAKE SUPERIOR COURT CIVIL DIVISION
The Honorable Calvin D. Hawkins, Judge
Cause No. 45D02-1009-CT-148

**January 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Indiana State Police Trooper Nathan Abbott ("Trooper Abbott"), the State of Indiana, and the Indiana State Police (collectively, "the State Police") appeal a jury verdict in favor of Michael Mitchell ("Mitchell") and Leonard Love ("Love") upon their claims for false imprisonment. We affirm.

**Issues**

The State Police present two issues for review:

I.     Whether there is sufficient evidence to support the verdict; and

II.    Whether the refusal to instruct the jury on the statutory language requiring a motorist to signal a lane change prejudiced the substantial rights of a party.

**Facts and Procedural History**

On June 9, 2004, Trooper Abbott was patrolling the Indiana Toll Road in Porter County when a 2002 Dodge Durango caught his attention. Trooper Abbott was "interested" in the vehicle due to its tinted windows and "environmental plate." (Tr. 348.) Having his interest piqued, Officer Abbott "tried to find a reason to stop it." (Tr. 268.) He drove past looking into the vehicle, "flipped back," checked for speed, and finding no speeding violation, "flipped again" to come up behind the Durango. (Tr. 268.) Officer Abbott then initiated a traffic stop.[1] He advised his dispatch that he was stopping a vehicle for a

---

[1] In their recitation of facts, the State Police contend that Trooper Abbott observed the driver pass a semi truck and change lanes without properly using his directional lights, and thus stopped the vehicle to issue a citation for a lane change violation. However, the jury verdict is not consistent with Trooper Abbott having stopped the vehicle for a proper purpose. We remind the State Police: "the facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed." Ind. Appellate Rule 46(A)(6)(b).

"possible" narcotics violation. (Tr. 364.)

Inside the Durango were two African-American males. Mitchell, a plaster and cement mason from Gary, Indiana, was driving. Love, a long-term Indiana State Prison correctional officer, was the passenger.

When Trooper Abbott approached, Mitchell asked why he had been stopped. Trooper Abbott responded, "I pulled you over because your turn signal wasn't on 300 feet" and Mitchell protested: "What is 300 feet? I never had my turn signal on. What is 300 feet?" (Tr. 160.) Trooper Abbott stated that he intended to give Mitchell a warning ticket.

Trooper Abbott obtained the vehicle registration and the occupants' identification. He asked Mitchell to exit the vehicle, and separately asked each where they were headed. According to Mitchell, they had been headed to obtain some automobile parts, but had been advised via cellphone that the parts were unavailable, and they were headed back home. Love, irritated by the pull-over that he deemed to be "for no reason," responded: "wherever he told you we [were] going." (Tr. 108.)[2]

Trooper Donald Kendrick ("Trooper Kendrick"), who had also been patrolling the toll road, joined in the stop. Trooper Abbott ran a criminal background check and learned that Mitchell had a prior criminal conviction, apparently involving narcotics.[3] Two minutes later,

---

[2]The State Police contend that Trooper Abbott was given conflicting "stories." Appellant's Br. at 1. Again, we remind the State Police that this is not consistent with a recitation of the evidence most favorable to the verdict.

[3] Trooper Abbott received a radio transmission regarding a code consistent with narcotics. His dispatcher advised him to call in on his cell phone, but Trooper Abbott was too busy to immediately comply. Thus, he was not contemporaneously advised of the specifics of the former offense, either its remoteness or its severity.

he requested a canine search unit. Trooper Kendrick suggested a search for active warrants out of Gary.

Trooper Abbott prepared a warning ticket, returned all documents to Mitchell and Love, and advised them that they were free to leave.[4] Subsequently, having learned from Trooper Kendrick that there was an active warrant out of Gary for Mitchell's arrest,[5] Trooper Abbott "ran back" to Mitchell's vehicle yelling: "Stop. Stop. Stop." (Tr. 109.) He asked for and was given verbal consent to search Mitchell's vehicle. He directed the occupants to exit and step to the back of the vehicle.

Trooper Abbott began to conduct a search he deemed to be "meticulous." (Tr. 429.) As he searched, Trooper Abbott repeatedly questioned where the drugs and guns were hidden and made comments such as "you don't know how good it's going to feel when I find these drugs" and "I'm going to find these drugs." (Tr. 109, 151.) Mitchell and Love were laughing at the officer and protesting "Ain't no drugs in this car." (Tr. 151.)

At some point, Mitchell was double-handcuffed and placed in the police car. Love was left standing by the side of the road. A canine unit arrived, and the canine swept the perimeter of the Durango. It scratched at the doors and was permitted inside the vehicle. Mitchell became tearful and complained that he had not agreed to this type of search and the animal was being allowed to "scratch up" his $43,000 vehicle. (Tr. 155.) Trooper Abbott

---

[4] Trooper Kendrick testified that Trooper Abbott followed "procedure" in asking for consent. As explained by Trooper Kendrick: "The occupants need to feel they are free to leave. That's why we give them all their information back, tell them they are free to go, and then we ask for consent." (Tr. 452.)

[5] The warrant was a 1994 warrant for arrest upon a charge of altering an interim license plate. It was recalled on June 10, 2004.

4

advised Mitchell: "You got money. You can get it fixed. Buff it out." (Tr. 121.) After the canine entry into the vehicle, Trooper Abbott conducted another search.

According to Trooper Abbott's testimony, he did not ever smell drugs or see paraphernalia. Nonetheless, he ultimately conducted three or four searches as Love waited by the roadside. No contraband was found.

Trooper Abbott eventually secured Mitchell's permission for Love to drive the Durango away. Mitchell was taken to Porter County Jail to await someone from Gary Police, who released him. The 1994 warrant was recalled on the following day. Mitchell was treated at the Methodist Hospital in Gary for wrist and shoulder pain and swelling.

On March 11, 2005, Mitchell and Love filed a complaint against the State Police. The Amended Complaint, filed February 2, 2006, alleges that the plaintiffs were subject to racial profiling and illegally detained on Indiana Highway 80. The false imprisonment claim was brought to trial before a jury on March 19, 2012. The jury found in favor of Mitchell and Love, and awarded Mitchell $200,000 and Love $100,000. This appeal ensued.

**Discussion and Decision**

I. Insufficiency of the Evidence

The plaintiffs contended that Trooper Abbott lacked any legal reason to stop them or detain them through successive searches and accordingly, Love was falsely imprisoned beginning with the traffic stop and continuing until he was permitted to drive away Mitchell's vehicle, and Mitchell was falsely imprisoned prior to the discovery of the warrant.[6]

---

[6] In Wallace v. Kato, 549 U.S. 384, 390 (2007), the Court stated that false imprisonment, which consists of

5

False imprisonment is the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent. Miller v. City of Anderson, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002), trans. denied. It may arise when arrest or detention is without a warrant or with a warrant that charges no offense. Stine v. Shuttle, 134 Ind. App. 67, 72, 186 N.E.2d 168, 171 (1962). Incarceration need not be shown; rather, it is sufficient to show a person's freedom of movement was in some manner restricted against his will. Delk v. Bd. of Comm'rs of Delaware Cnty., 503 N.E.2d 436, 439 (Ind. Ct. App. 1987). An improper motive or malice is not an element of false imprisonment. Dubreuil v. Pinnick, 178 Ind. App. 526, 530, 383 N.E.2d 420, 423 (1978). Here, the jury was instructed that, to recover damages for false imprisonment, which imprisonment may be by false arrest, the plaintiffs were required to prove by a preponderance of the evidence that Trooper Abbott was a law enforcement officer, he restrained the plaintiffs' freedom of movement or liberty without their consent, not acting pursuant to a warrant, and plaintiffs were damaged as a result.

Upon review, we neither reweigh the evidence nor judge the credibility of witnesses, but will consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn from that evidence. Inlow v. Wilkerson, 774 N.E.2d 51, 54 (Ind. Ct. App. 2002), trans. denied. This Court indulges in every reasonable presumption in favor of the legality of a jury's verdict and will reverse on grounds of insufficient evidence only where the evidence points to a single conclusion different from that reached by the jury. Id.

---

detention without legal process, ends once the victim becomes held pursuant to legal process. Thereafter, unlawful detention can form part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied by wrongful institution of legal process. Id.

6

The essence of the parties' dispute was whether Trooper Abbott acted lawfully. In particular, there was conflicting evidence regarding justification for the initial stop. Although he had advised dispatch of a possible narcotics stop, Trooper Abbott testified that the stop was for a lane change violation.

Love testified he was certain that Mitchell did not change lanes during the time on the toll road. Mitchell's testimony was more equivocal. He testified that he stayed in the right lane, and was in the right lane when Trooper Abbott drove up. However, when questioned about the "entire time," Mitchell conceded that he "only changed lanes once or twice to go around somebody. I don't know." (Tr. 163.) He also testified that he was "probably" in the right lane and lacked recollection. (Tr. 165.) He acknowledged his deposition testimony that he had not changed lanes for over one mile immediately preceding the stop. Finally, he suggested he moved over to either the right shoulder or right lane to accommodate the police officer driving up behind him.

The State Police concedes that the jury must have believed that Mitchell never changed lanes. However, they argue: "But Mitchell was the only witness other than Trooper Abbott who was reasonably in a position to know whether he ever changed lanes, and his testimony falls short of carrying his burden to show he was improperly stopped for a traffic infraction." Appellant's Br. at 15. The State Police asks that Love's testimony on this point be entirely disregarded because he was not in a position to be as attentive as a driver. However, an appellate court does not resolve conflicts in the evidence or reweigh it, as it is the jury's responsibility to resolve such conflicts. Lott v. State, 690 N.E.2d 204, 208 (Ind.

7

1997).  The State Police simply seek to have the evidence in this case reweighed, and the credibility of the witnesses assessed, contrary to our standard of review.

We look to that evidence most favorable to the verdict.  From that testimony, the jury could have concluded that there was no lane change at any time, consistent with Love's account, or that there was a lane change made at some point during the trip but not so as to be observed by Trooper Abbott, consistent with Mitchell's account.  While Mitchell was equivocal as to whether he made a lane change during the drive, he did not specifically testify that he made a lane change observed by Trooper Abbott.  He did not squarely contradict Love on this point.  Indeed, he had verbally disputed the officer's right to pull him over.  Mitchell testified that when Trooper Abbott gave his reason for the traffic stop as an illegal lane change, Mitchell had immediately protested.  Additionally, the jury heard testimony of Trooper Abbott's dispatch regarding suspected narcotics.

The State Police argue that "the greater weight of the evidence" did not establish the false imprisonment claim.  Appellant's Br. at 12.  Nonetheless, this is not the appropriate standard on review.  Reversal for insufficient evidence is appropriate only if the evidence points to a single conclusion, one not reached by the jury.  Inlow, 774 N.E.2d at 54.  Here, the evidence does not point solely to a contrary conclusion.  Accordingly, there is sufficient evidence to sustain the jury's verdict.

## II.  Jury Instruction

The State Police tendered a proposed final jury instruction, as follows:

A vehicle traveling in a speed zone of at least fifty (50) miles per hour shall give a signal continuously for not less than the last three hundred (300) feet

traveled by the vehicle before turning or changing lanes. Ind. Code Ann. § 9-21-8-25, in relevant part.

(App. 35.) The instruction was refused. According to the State Police, this instruction would have provided the jury with a valid basis for the traffic stop and rendered the jury less likely to consider Trooper Abbott's action to be consistent with racial profiling or "harassment." Appellant's Br. at 26.

In reviewing a trial court's decision to give or refuse a tendered instruction, the appellate court considers whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. Willis v. Westerfield, 839 N.E.2d 1179, 1189 (Ind. 2006). "The selection of instructions is left to the sound discretion of the trial court so long as the instructions as a whole accurately and completely set forth the elements of the parties' claims and defenses." Id. No error or defect in the proceeding is ground for setting aside a verdict unless it affects the substantial rights of a party. Ind. Trial Rule 61.

The plaintiffs conceded that Trooper Abbott was charged with the duty of enforcing traffic laws. As to the existence of a statute requiring lane change signals, there was no evidentiary dispute. Trooper Abbott, when asked on direct examination "is there a statute that requires people to signal a lane change," responded: "9-21-8-25 requires that you signal your lane change 300 feet." (Tr. 269.) The plaintiffs presented no contradictory evidence. Although in closing argument – without objection from the State Police – the plaintiffs' attorney questioned the likelihood of strict enforcement of such a statute, the comments of an

attorney do not constitute evidence. See Richards-Wilcox, Inc. v. Cummins, 700 N.E.2d 496, 499 n.3 (Ind. Ct. App. 1998).

Had the requested instruction been given, it would have merely highlighted one portion of the evidence,[7] and such evidence was not necessary to establish either a claim or defense. The jury was not asked to determine whether a lane change signal statute existed. Rather, the jury was charged with determining whether the plaintiffs had proved their claim that Trooper Abbott was not engaged in lawful enforcement of a legitimate traffic law, but rather conducted a pretextual stop, unwarranted detentions, and successive futile searches based upon his unfounded belief that the plaintiffs were drug transporters.

We cannot agree with the State Police that the omission prejudiced their substantial rights.

**Conclusion**

There is sufficient evidence to support the jury verdict. The State Police have not established that the trial court's refusal of a tendered instruction resulted in prejudice to their substantial rights so as to obtain reversal.

Affirmed.

VAIDIK, J., and BROWN, J., concur.

---

[7] See Ham v. State, 826 N.E.2d 640, 641-42 (Ind. 2005) (instructions that unnecessarily emphasize one particular evidentiary fact, witness, or phase of a case have long been disapproved).